## COMMONWEALTH *vs.* ANDRES E. BAEZ, JR.

No. 98-P-1129.

Worcester. February 18, 1999. - June 11, 1999.

Present: LENK, GILLERMAN, & RAPOZA, JJ.

*Search and Seizure,* Automobile, Threshold police inquiry, Probable cause. *Threshold Police Inquiry. Constitutional Law,* Search and seizure, Probable cause. *Motor Vehicle,* Tinted windows. *Practice, Criminal,* Instructions to jury, Reasonable doubt. *Firearms.*

The record of a hearing on a criminal defendant's motion to suppress evidence supported the judge's findings of fact [116], and the judge correctly concluded that the police officer acted reasonably in stopping the defendant's car for a suspected violation of G. L. c. 90, § 9D [117-119], that there was probable cause to search the car for contraband, and that, in any event, the defendant had consented to the search [118-119].

At a criminal trial, the judge's instructions to the jury on reasonable doubt and the elements of the crime conveyed adequately the Commonwealth's burden of proof and created no substantial risk of a miscarriage of justice. [119]

At the trial of a complaint for unlawful possession of a firearm without a license, the evidence of the defendant's knowledge of and control over the weapon was sufficient to warrant the judge's denial of the defendant's motion for a required finding of not guilty. [119-120]

COMPLAINT received and sworn to in the Westborough Division of the District Court Department on October 25, 1997.

Motions to suppress evidence were heard by *Paul S. Waickowski,* J., and the case was tried before *Thomas F. Sullivan, Jr.,* J.

*Juan Ortiz-Lebron* for the defendant.

*Harry D. Quick, III,* Assistant District Attorney, for the Commonwealth.

LENK, J. Complaints issued against the defendant for unlawful possession of a firearm without a license, resisting arrest, possessing a firearm without a firearm identification card, and defacing the serial number of a firearm. The trial judge

dismissed the charge of possessing a firearm without a firearm identification card and, after trial by six-person jury, the defendant was found not guilty of resisting arrest but guilty of the remaining two charges, i.e., unlawful possession of a firearm and defacing the serial number thereon. On appeal, the defendant claims error in the motion judge's denial of his motion to suppress evidence, and in the trial judge's jury instructions and his denial of the defendant's motion for a required finding of not guilty on the charge of possession of a firearm.

*Motion to suppress evidence.* The motion judge, after an evidentiary hearing, issued written findings and rulings denying the defendant's motion to suppress the handgun. The defendant maintains that the judge's findings are clearly erroneous. He also claims that the State trooper did not have probable cause either to stop his car or, once stopped, to search his person or his car after he produced a valid driver's license and registration, and that he never freely consented to such a search.

As to the defendant's first point, that the judge's findings are clearly erroneous, our review. of the record suggests quite the contrary. The only witness at the suppression hearing was the State trooper who had stopped the defendant's car. Notwithstanding certain inconsistencies between the trooper's written reports and live testimony and defense counsel's cross-examination of the trooper, which was apparently aimed at showing that the stop was a pretext and for improper purposes, the motion judge credited the trooper's testimony and based his findings on that testimony. Questions of credibility are for the motion judge and not for us to resolve. We see no reason to disturb the judge's findings, which are in substance as follows.

While on patrol on October 25, 1997, State police Trooper Slattery observed a car with passenger's and driver's side windows that were tinted to an extent the trooper thought in excess of what State law permitted. He decided to stop the car to check the windows with a meter he carries for the purpose. In the process of pulling the defendant over, the trooper got behind the defendant's car and saw the defendant make a rocking movement with his body as if to reach under the seat. Once stopped, the trooper approached the driver's side window and asked the defendant for his license and registration. The defendant first produced a shopping card and not a license. While awaiting the production of license and registration, which the defendant managed to produce after additional requests for

them, the trooper noticed the smell of marijuana coming from the car and asked the defendant if he had smoked marijuana in the car. The defendant denied doing so, replying to the effect that he did but he had not smoked that day.[1]

The trooper received the defendant's consent to search the car. He had the defendant (the sole occupant) leave the car, searched him, and found nothing. The trooper then looked under the front seat of the car where he came upon a loaded handgun. The trooper told the defendant what he had found and asked if he had a permit. The defendant replied that he had a firearm identification card but not a permit to carry the handgun. With some difficulty, the trooper arrested the defendant and brought him to the police station where he was given his Miranda rights, which he understood. Upon inquiry, and without coercion, the defendant stated that he had found the gun, cleaned it, and kept it for himself. The trooper also testified at the suppression hearing without contradiction that the tint of the car windows was not measured at the scene but, when later checked at the station, measured in excess of the legal limit. (The tinting resulted in light transmission of thirty-one per cent when the statute requires at least thirty-five per cent.) The defendant received a citation for this violation.

The defendant contends that the stop of his car was unlawful. It is well established that where the police have observed a traffic or motor vehicle law violation, they may pull over the automobile. *Commonwealth* v. *Santana*, 420 Mass. 205, 207 (1995). See *Commonwealth* v. *Bacon*, 381 Mass. 642, 644 (1980). It is also clear that G. L. c. 90, § 9D,[2] prohibits excessively tinted car windows, as defined therein. The defendant

---

[1] A back-up trooper who had been called to the scene of the stop also smelled marijuana in the car. A trained police dog who later sniffed out the car at the police station indicated a positive response for drugs in two spots but no measurable amount of drugs was found there.

[2] General Laws c. 90, § 9D, as inserted by St. 1985, c. 411, provides in pertinent part: "No person shall operate any motor vehicle upon any public way or upon any way to which the public shall have the right of access with any of the following affixed thereto: . . .

"(2) nontransparent or sunscreen material, window application, . . .

"This section shall not apply to: . . .

"(4) the use of nontransparent or sunscreen material or window application which has a total visible light reflectance of not more than thirty-five per cent or a visible light transmittance of not less than thirty-five per cent on the side windows immediately adjacent to the right and left of the operator's seat, the

argues that the trooper did not in fact know at the time he stopped the defendant's car that the tinted windows he saw were darker than the law permits. The point that the defendant is driving at is apparently that, until measured by a tint meter, the naked eye cannot tell whether tinted windows do or do not violate the law and that it cannot be the "visible violation of law," *Commonwealth* v. *Kimball*, 37 Mass. App. Ct. 604, 606 (1994), or the "observed" motor vehicle law violation, *Commonwealth* v. *Santana, supra,* necessary to justify stopping a car.

We think the standard to be used in determining the legality of a stop based on a suspected violation of c. 90, § 9D, is whether the officer reasonably suspected, based on his visual observations, that the tinting of the windows exceeded the permissible limits of § 9D. Here, the trooper testified that he was familiar with the state law concerning tinted windows, that he was in possession of a device to measure levels of transparency and that, while on highway patrol, his attention was drawn to the defendant's car because its side windows appeared to the trooper to be (and, as later measured, were) darker than the legal limit. He drove his cruiser next to the defendant's car in order to get a better look at the windows. He concluded, based on his experience, that the window tint exceeded the permissible limit and ordered the car over. In such circumstances, the stop was reasonable and warranted. See *People* v. *Neibauer,* 214 Cal. App. 3d 1278 (1989).

The defendant complains, too, of the course of events that unfolded following the stop of his car, but there is no merit in his assertions of impropriety. The trooper smelled marijuana before the defendant produced the requested driving documents. Given the odor, the defendant's backward and forward movement inside the car before pulling over, his nervousness in responding to the document request, and the nature of his reply to the trooper's questions about the marijuana smell, there was

side windows immediately to the rear of the operator's seat and the front passenger seat or on the rear window if the vehicle is equipped with two outside mirrors, one on each side, adjusted so that the driver has a clear view of the highway behind the vehicle. . . .

"Violations of any provisions of this section shall be punishable by a fine of not more than two hundred and fifty dollars. Upon a third or subsequent conviction of a violation of the provisions of this section, the registrar shall suspend the operator's license of a person so convicted for a period not to exceed ninety days."

probable cause (not to mention the defendant's consent) to search the car for contraband.[3] See *Commonwealth* v. *Kitchings*, 40 Mass. App. Ct. 591, 596 & n.8 (1996).

*Trial errors.* The defendant argues that the trial judge's jury instructions on reasonable doubt were fatally flawed and created a substantial risk of a miscarriage of justice, and that it was also error for him to have denied the defendant's motion for a required finding of not guilty on the charge of carrying a firearm.

The defendant complains that the jury charge should have indicated that the Commonwealth had the burden of proving each and every element of each crime beyond a reasonable doubt. The judge's instructions indicated that each charge had to be proven beyond a reasonable doubt, and he set forth fully each element of each charge to be proved. It is also apparent that the judge did not in any way use language which shifted the burden of proof to the defense. While the judge did not expressly instruct the jury that each element of each charge must be proved beyond a reasonable doubt, as he should have done, we nonetheless conclude that the instructions, read as a whole, conveyed adequately to the jury that it is the Commonwealth that must prove beyond a reasonable doubt each element of each charge. Moreover, the defendant did not object to the judge's instructions and we do not think the omission in any event resulted in a substantial risk of a miscarriage of justice.

The defendant's contention that it was error for the judge to have denied his motion for a required finding of not guilty of carrying a firearm because there was insufficient evidence of the defendant's knowledge and possession of the gun requires little discussion. The trooper testified that he discovered the firearm in plain view, its "butt end" protruding from beneath the driver's seat, allowing the defendant driver and car owner easy access to and control over the weapon. It is reasonable to infer that the defendant knew it was there. In addition, there was testimony that the defendant acknowledged to the back-up trooper that he had found the gun, cleaned it, and kept it for

---

[3]The defendant did not complain below as to the search of his person made after he got out of his car, and the matter is not properly before us on appeal.

himself but had not yet disposed of it. No more is necessary and the motion was properly denied.

*Judgments affirmed.*