## COMMONWEALTH vs. MICHAEL BERNARD.

No. 13-P-682.

Essex. November 7, 2013. - February 7, 2014.

Present: WOLOHOJIAN, AGNES, & SULLIVAN, JJ.

*Motor Vehicle,* Registration. *Practice, Criminal,* Motion to suppress, Findings by judge. *Evidence,* Photograph, Credibility of witness.

A District Court judge, in allowing a criminal defendant's pretrial motion to suppress evidence seized by a State trooper during a motor vehicle stop based on the trooper's determination that the vehicle had a tinted plastic cover over its rear license plate, in violation of G. L. c. 90, § 6, did not err in finding that the trooper, at trial, agreed that a photograph accurately depicted the license plate and its cover as they appeared when he stopped the defendant [773-774], or in finding that the photograph showed a "clear" license plate, i.e., that the cover did not impede the visibility of the license plate, regardless of any tint [774-775].

This court concluded that a license plate cover, tinted or not, does not violate clear language of G. L. c. 90, § 6, or its implementing regulation unless it obscures the registration numbers of the vehicle on which it is placed, or reduces the legibility or substantially diminishes the reflective quality of the license plate. [775-777]

COMPLAINT received and sworn to in the Lawrence Division of the District Court Department on June 10, 2011.

A pretrial motion to suppress evidence was heard by *Debra Shopteese*, J.

An application for leave to prosecute an interlocutory appeal was allowed by *Margot Botsford*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by her to the Appeals Court.

*Ronald E. DeRosa,* Assistant District Attorney, for the Commonwealth.

*Edward Crane* for the defendant.

WOLOHOJIAN, J. The Commonwealth appeals from a District Court judge's ruling allowing the defendant's motion to sup-

press. At issue is a State trooper's decision, based on G. L. c. 90, § 6, to stop a vehicle because it had a tinted plastic cover over its rear license plate. The statute requires that "number plates shall be kept clean with the numbers legible and shall not be obscured in any manner by the installation of any device obscuring said numbers." G. L. c. 90, § 6, as appearing in St. 1968, c. 293. After briefing and an evidentiary hearing, which included introduction by the Commonwealth of a color photograph[1] showing the license plate and its cover, the judge found that the license plate was clear, with all numbers and letters visible and that "[a]s such, the license plate was not obstructed when the defendant was stopped pursuant to" G. L. c. 90, § 6. Because there was no other basis for the stop, the judge allowed the defendant's motion to suppress. We affirm.

We set out the judge's findings and rationale:

> "Based on the credible evidence presented at an evidentiary hearing held on July 17, 2012, the Defendant's motion is allowed and the Court finds as follows:
>
> "On June 9, 2011, while on a routine patrol in a marked cruiser, State Trooper Sweeney[] observed the Defendant operating a motor vehicle on Route 495 at approximately 4:40 p.m.
>
> "The operator drove appropriately and no moving violations were observed.
>
> "Trooper Sweeney observed a plastic cover over the rear license plate of the Defendant's motor vehicle and immediately pulled the vehicle over for obstructing the vehicle license plate in violation of [G. L. c. 90, § 6].
>
> "The sole reason for the stop was for violation of [G. L. c. 90, § 6].
>
> "Trooper Sweeney routinely performs such stops if there is a cover of any kind on a license plate.

---

[1]The Commonwealth objected to the defendant's introduction of a black and white photograph depicting the rear of the car, and asked that the court admit instead a color version of the photograph, which it did.

"During the hearing, defense counsel[] presented Trooper Sweeney with a photograph of the license plate at issue with said plastic cover intact.

"Trooper Sweeney agreed the photograph presented was a fair and accurate depiction of the plate, as it appeared at the time the Defendant was stopped.

"The Court finds that the photograph submitted depicts a clear license plate with all numbers and letters visible. As such, the license plate was not obstructed when the defendant was stopped pursuant to [G. L. c. 90, § 6].

"There was no further evidence presented regarding the initial stop.

"The sole reason for the stop was for violation of [G. L. c. 90, § 6. H]owever, the court finds that the plate was not obstructed. The stop was therefore not permissible."[2]

*Findings.* The Commonwealth argues that two of the judge's findings were clearly erroneous. "A finding is clearly erroneous if it is not supported by the evidence, or when the reviewing court, on the entire evidence, is left with the firm conviction that a mistake has been committed." *Commonwealth* v. *Hilton*, 450 Mass. 173, 178 (2007).

The Commonwealth first argues that it was clear error to find that the trooper agreed that the photograph accurately depicted

---

[2]If the judge had found that the trooper initiated the stop because the license plate appeared to him to be obscured (a question of fact), rather than that he routinely stopped vehicles that had "a cover of any kind on a license plate" (a mistake of law, as we shall discuss), this would be a different case. In those circumstances, the test would be whether "the facts and circumstances known to the officer [were] sufficient to create a reasonable suspicion . . . in a reasonable . . . officer [that the tint was sufficiently dark as to obscure the license plate, in violation of § 6]." *Commonwealth* v. *Smigliano*, 427 Mass. 490, 493 (1998). Compare *Commonwealth* v. *Baez*, 47 Mass. App. Ct. 115, 118 (1999). As to the difference between traffic stops based on a mistake of law versus a mistake of fact, see generally *Commonwealth* v. *Rivas*, 77 Mass. App. Ct. 210, 216 n.6 (2010), quoting from *United States* v. *Coplin*, 463 F.3d 96, 101 (1st Cir. 2006): "[There is a] material difference between traffic stops based on a police officer's mistake of law and those based on a police officer's mistake of fact. Stops premised on a mistake of law, even a reasonable, good-faith mistake, are generally held to be unconstitutional."

the license plate and its cover as they appeared when the defendant was stopped. However, when presented on cross-examination with a photograph of the rear of the vehicle, the trooper testified that it "look[ed] like the vehicle that [he] saw on that particular day." He also testified that he believed the photograph showed "the actual car and the license plate on the vehicle on June 9th," the day of the stop. In light of this testimony, the judge's finding was not clearly erroneous.

It is true, as the Commonwealth points out, that the trooper testified on direct examination that he was unable "to see the license plate" when he looked at it from an angle across two lanes of traffic.[3] It does not follow, however, that the judge's finding that the trooper agreed the photograph accurately depicted the car and license plate as it appeared when the defendant was stopped is clearly erroneous. Even if the trooper's direct testimony was in part inconsistent with his testimony on cross-examination, any conflict was for the judge to resolve.

"[T]he determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw the witnesses." *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997), quoting from *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). "In other words, an appellate court will ordinarily not disturb the findings of a judge who saw and heard the witnesses, who was free to make credibility determinations and to accept all, some, or none of their testimony, unless there is a showing of clear error in those findings." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 2-12, at 2-26 (2012-2013 ed.). See *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004). Moreover, where, as here, a judge states that her findings are based on the "credible evidence" presented during the evidentiary hearing — and some of the evidence was conflicting — "it is apparent that the judge credited only those portions of the testimony that were reflected in her findings and were relevant to the specific issues before her." *Commonwealth* v. *Daniel*, 464 Mass. 746, 749 (2013).

The Commonwealth next argues that the judge's finding that the photograph shows a "clear" license plate was clearly er-

---

[3]The trooper did not explicitly say that the reason he could not see the license plate was because of its cover.

roneous because the photograph shows the cover was tinted.[4] We are not persuaded; the judge did not use "clear" as an antonym for "tinted." A natural reading of the entire finding shows that the judge used "clear" to mean that the cover did not impede the visibility of the license plate, regardless of any tint. Moreover, our independent review of the photograph, see *Commonwealth* v. *Hoyt*, 461 Mass. 143, 148 (2011), leads us to the same conclusion. Although the cover has a bluish tint, it does not to any degree obscure or reduce the legibility of the license plate.

*General Laws c. 90, § 6.* The Commonwealth argues, as a matter of first impression, that "[r]egardless of whether the trooper could read the plate, . . . the stop was lawful because driving with a tinted number plate cover is prohibited under the plain language of G. L. c. 90, § 6, the plain language of an implementing regulation, 540 Code Mass. Regs. § 2.23, and the policy underlying both."

As in all matters of statutory construction, we begin with the language of the statute. "In interpreting the meaning of a statute, we look first to the plain statutory language. Where the language of a statute is clear and unambiguous, it is conclusive as to legislative intent and the courts enforce the statute according to its plain wording so long as its application would not lead to an absurd result." *Worcester* v. *College Hill Properties, LLC*, 465 Mass. 134, 138 (2013) (quotations, citations, and ellipses omitted). The statute provides, in relevant part:

> "Every motor vehicle or trailer registered under this chapter when operated in or on any way in this com- monwealth shall have its register number[5] displayed conspicuously thereon by the number plates[6] furnished by the registrar . . . one number plate to be attached at the

---

[4]In addition, the trooper testified the cover was tinted. Although the defendant points out that the judge did not make a finding that the cover was tinted, the defendant does not seriously contest this testimony.

[5]General Laws c. 90, § 1, defines "Register number" as "the letter or letters, mark or marks, arabic numeral or numerals, or combinations thereof assigned by the registrar to a motor vehicle or trailer."

[6]General Laws c. 90, § 1, defines "Number plate" as "the sign or marker furnished by the registrar on which is displayed the register number or mark of a motor vehicle assigned to such motor vehicle by the registrar."

front and one at the rear of said motor vehicle, . . . but if the registrar issues but one number plate it shall be attached to the rear of the vehicle so that it shall always be plainly visible. The said number plates shall be kept clean with the numbers legible and shall not be obscured in any manner by the installation of any device obscuring said numbers . . . ."

G. L. c. 90, § 6.

The statute does not by its terms prohibit the use of all license plate covers, nor does it mention tinted covers. Instead, consistent with its overall focus on visibility and legibility, the statute prohibits the "installation of any device obscuring [the registration] numbers." "Device" is certainly broad enough to encompass license plate covers.[7] But a cover (tinted or not) does not violate the statute unless it obscures the registration numbers.

The regulation likewise does not impose a universal prohibition against license plate covers.[8] Instead, it prohibits only those covers that reduce the legibility or substantially diminish the reflective quality of the license plate:

> "[N]o reflectorized number plate issued by the Registrar of Motor Vehicles and mounted on any motor vehicle or trailer shall be covered with any glass, plastic or similar material if such material reduces the legibility or substantially diminishes the reflective qualities of such plate."

540 Code Mass. Regs. § 2.23(1) (2008). As with the statute, the touchstones of the regulation (the full text of which may be found in the margin)[9] are the legibility and visibility of the license plate.

---

[7] A "device" is "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." Webster's Third New International Dictionary 618 (1993).

[8] A blanket regulatory ban on license plate covers could not be reconciled with the plain language of the statute. "An agency regulation that is contrary to the plain language of the statute and its underlying purpose may be rejected by the courts." Spaniol's Case, 466 Mass. 102, 110 (2013), quoting from Smith v. Commissioner of Transitional Assistance, 431 Mass. 638, 646 (2000).

[9] Title 540 Code Mass. Regs. § 2.23 provides:

"(1) On or after August 1, 1969, no reflectorized number plate

Where, as here, the statutory and regulatory language is clear and presents no lacunae, we are not tempted by the Commonwealth's argument that we should discern a different legislative intent based on the section of G. L. c. 90 that governs windshields and windows, G. L. c. 90, § 9D. Although that section specifies the degree to which windows may be tinted, see G. L. c. 90, § 9D(4),[10] there is no reason to import that specification into the section of the statute that regulates license plates where the Legislature has not done so.

The order allowing the motion to suppress is affirmed.

*So ordered.*

issued by the Registrar of Motor Vehicles and mounted on any motor vehicle or trailer shall be covered with any glass, plastic or similar material if such material reduces the legibility or substantially diminishes the reflective qualities of such plate.

"(2) Any such number plate covered with any glass, plastic or similar material which reduces the legibility or substantially diminished [*sic*] the reflective qualities of such plate shall be deemed not to be maintained in good order, and in violation of the provision of said M.G.L. c. 90.

"(3) Nothing contained in 540 CMR 2.00 shall be construed to prohibit the use of any metal or other frame covering, the border of any such reflectorized number plate so long as such frame does not cover or obscure in any manner the register number or any other words, symbols or numbers lawfully imprinted on or affixed to such number plate."

[10]Section 9D, as appearing in St. 1985, c. 411, bars the use of "nontransparent or sunscreen material, window application, reflective film or nonreflective film . . . so as to make [the] windshield and . . . window glass areas in any way nontransparent or obscured from either the interior or exterior thereof," but exempts from this prohibition, inter alia,

"(4) the use of nontransparent or sunscreen material or window application which has a total visible light reflectance of not more than thirty-five per cent or a visible light transmittance of not less than thirty-five per cent on the side windows . . . or on the rear window if the vehicle is equipped with two outside mirrors . . . ."