NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11814

COMMONWEALTH  vs.  ELIVETTE RODRIGUEZ.


Bristol.    March 5, 2015. - September 22, 2015.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.


Marijuana.  Threshold Police Inquiry.  Search and Seizure,
    Threshold police inquiry, Reasonable suspicion.
    Constitutional Law, Investigatory stop, Reasonable
    suspicion.



Complaint received and sworn to in the New Bedford Division
of the District Court Department on April 27, 2012.

A pretrial motion to suppress evidence was heard by Joseph
I. Macy, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Gants, J., in the Supreme Judicial Court
for the county of Suffolk, and the appeal was reported by him to
the Appeals Court.  The Supreme Judicial Court on its own
initiative transferred the case from the Appeals Court.


John L. Calcagni, III, for the defendant.
Corey T. Mastin, Assistant District Attorney, for the
Commonwealth.

BOTSFORD, J. This case, in which the defendant appeals from the denial of her motion to suppress, centers on a motor vehicle stop based on a police officer's detection of an odor of burnt marijuana coming from the vehicle. It requires us to evaluate further the impact of G. L. c. 94C, §§ 32L-32N, inserted by St. 2008, c. 387, §§ 2-4, which decriminalized possession of one ounce or less of marijuana. For the reasons discussed hereafter, we conclude that at least in a stop such as this one, where there was at best reasonable suspicion to believe that a civil marijuana infraction was occurring, but not probable cause, the stop was impermissible. Accordingly, the order denying the defendant's motion to suppress must be reversed.

1. Background. To provide context, we summarize the evidence presented at the hearing on the defendant's motion to suppress.[1] On the evening of April 26, 2012, Detective Daniel Amaral of the New Bedford police department was driving an unmarked police cruiser assisting a narcotics surveillance team of police officers when he came upon a motor vehicle that he had

---

[1] At the evidentiary hearing, one witness testified, Detective Daniel Amaral of the New Bedford police department. Following the hearing, the motion judge wrote a brief memorandum of decision, but it does not include specific factual findings. The information summarized in the text is taken from the testimonial evidence presented. This factual information does not appear to be disputed, and it is not inconsistent with the motion judge's decision. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 436-438 (2015).

stopped once before. During the earlier stop, Amaral had arrested the woman who normally drove that vehicle for heroin possession. He knew that the surveillance team was interested in the vehicle because of its connection to the earlier drug-related arrest. Accordingly, he followed the vehicle and thereafter received instruction from the surveillance team to pull it over.[2]

As Amaral followed the vehicle, he detected an odor of burnt marijuana coming from it.[3] Based on the odor, and without having seen the driver of the vehicle commit any traffic violations, Amaral pulled the vehicle over and approached the driver's side. The driver, a male, held in his right hand what Amaral recognized as a marijuana cigar. Amaral asked the driver whether the cigar was what was causing the odor, and the driver responded that it was. Amaral then confiscated the cigar and asked for the driver's license and registration. The stop

---

[2] The background that led to the instruction was the following: the surveillance team that night saw the vehicle stop in front of a "home of interest"; the driver of the vehicle went into the home, at which point the team instructed Amaral that if the driver did not remain in the residence long, the vehicle should be stopped and the driver questioned. Minutes after the driver went into the home, the driver returned to the vehicle and drove away.

[3] Both Amaral and the vehicle driver had their windows down, allowing Amaral to smell the odor. In addition, Amaral had significant experience in narcotics investigation and interdiction, and we assume without deciding that he was qualified to identify the odor as that of burnt marijuana.

continued, and in the course of it, police discovered a plastic bag in the vehicle containing sixty Percocet pills.[4] The defendant, a passenger in the vehicle at the time of the stop, was charged with possession with intent to distribute a class B substance in violation of G. L. c. 94C, § 32A (a),[5] conspiracy to violate the drugs laws under G. L. c. 94C, § 40, and a drug violation near a school or park under G. L. c. 94C, § 32J -- all in connection with the pills.

On November 30, 2012, the defendant moved to suppress evidence of the pills. The motion judge held an evidentiary hearing on May 3, 2013; the only issue addressed was the propriety of the motor vehicle stop. Following the hearing, the judge concluded that the odor of burnt marijuana, coupled with other "suspicious activity implicating but not rising to drug activity" involving the vehicle, justified the stop. A single justice of this court granted the defendant's request for leave to pursue an interlocutory appeal of the order denying the motion to suppress, and directed the appeal to be heard in the

---

[4] The defendant's attorney represented during oral argument before us that the manner in which the bag of pills was discovered was the subject of a separate motion to suppress that remains pending in the District Court. The record in this case contains no information concerning how the pills were discovered, but the issue is not relevant to our analysis here.

[5] The defendant was originally charged with cocaine trafficking in violation of G. L. c. 94C, § 32E (b). That charge was eventually reduced to possession with intent to distribute a class B substance.

Appeals Court. See Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996); G. L. c. 211, § 4A. We transferred the case from the Appeals Court on our own motion.

2. Discussion. "When reviewing a motion to suppress evidence, we adopt the motion judge's subsidiary findings of fact absent clear error, but we independently determine the correctness of the judge's application of constitutional principles to the facts as found." Commonwealth v. Catanzaro, 441 Mass. 46, 50 (2004). See Commonwealth v. Craan, 469 Mass. 24, 26 (2014).

In 2008, as a result of an initiative petition adopted by the voters, possession of one ounce or less of marijuana changed from being a criminal to a civil offense in the Commonwealth. See G. L. c. 94C, §§ 32L-32N. See also Commonwealth v. Cruz, 459 Mass. 459, 470 (2011). As a consequence of the change, this court has concluded that once police have validly stopped a vehicle for a reason independent of marijuana, the odor of burnt marijuana alone does not create probable cause or even a reasonable suspicion of criminal activity sufficient to justify ordering the vehicle's occupants to get out of the vehicle. See Cruz, supra at 472, 476. We also have concluded that the odor of either burnt or unburnt marijuana does not support a finding of probable cause to search a vehicle without a warrant. See Commonwealth v. Overmyer, 469 Mass. 16, 23 (2014); Cruz, supra

at 475-476.  See also Craan, 469 Mass. at 29-35; Commonwealth v.

Daniel, 464 Mass. 746, 751-757 (2013).  Recognizing the changed

status of possession of small quantities of marijuana, the

Commonwealth concedes that in the present case, the odor of

burnt marijuana, even when combined with the other limited

indicia of a drug transaction that preceded the vehicle stop,

did not amount to reasonable suspicion of criminal activity that

would have justified the police in stopping the vehicle for

investigative purposes.  Nonetheless, because c. 94C, § 32L,

simply decriminalizes the possession of one ounce or less of

marijuana and replaces the criminal penalty with a civil penalty

for such possession,[6] the Commonwealth analogizes the stop that

occurred here to routine stops of automobiles for civil traffic

violations.  Pursuing the analogy, the Commonwealth urges us to

affirm the order denying the defendant's motion to suppress on

the ground that, just as an officer may stop a motor vehicle to

---

[6] General laws c. 94C, § 32L, provides, in pertinent part:

  "Notwithstanding any general or special law to the
  contrary, possession of one ounce or less of marihuana
  shall only be a civil offense, subjecting an offender who
  is eighteen years of age or older to a civil penalty of one
  hundred dollars and forfeiture of the marihuana, but not to
  any other form of criminal or civil punishment or
  disqualification."

issue a citation for a civil traffic offense, an officer may do so in order to issue a civil citation for marijuana possession.[7]

Because both the Commonwealth and the defendant premise much of their arguments on the statutes that establish procedures for issuing citations for traffic violations and for civil marijuana infractions, we begin our analysis with a review of those statutes. General Laws c. 90C, §§ 2 and 3 (A), authorize police to issue citations for motor vehicle traffic violations, including civil infractions.[8,9] The Commonwealth

---

[7] Recognizing that this argument differs from the basis on which the District Court motion judge denied the defendant's motion to suppress, the Commonwealth argues that we may nevertheless affirm the denial "on grounds different from those relied on by the motion judge if the correct or preferred basis for affirmance is supported by the record and the findings." Commonwealth v. Va Meng Joe, 425 Mass. 99, 102 (1997).

[8] General Laws c. 90C, § 2, provides, in pertinent part:

"[A]ny police officer assigned to traffic enforcement duty shall, whether or not the offense occurs within his presence, record the occurrence of automobile law violations upon a citation . . . and [indicate] thereon . . . whether the citation shall constitute a written warning and, if not, whether the violation is a criminal offense for which an application for a complaint as provided by [G. L. c. 90C, § 3 (B)] shall be made, whether the violation is a civil motor vehicle infraction which may be disposed of in accordance with [G. L. c. 90C, § 3 (A)], or whether the violator has been arrested in accordance with [G. L. c. 90, § 21]. Said police officer shall inform the violator of the violation and shall give a copy of the citation to the violator. Such citation shall be signed by said police officer and by the violator, and whenever a citation is given to the violator in person that fact shall be so certified by the police officer. The

argues, and the defendant agrees, that although these statutes contain no express language regarding police authority to stop moving vehicles for the purpose of issuing citations for civil traffic violations, such stops have been permitted. See Commonwealth v. Bacon, 381 Mass. 642, 644 (1980) ("Where police have observed a traffic violation, they are warranted in stopping a vehicle"). See also Commonwealth v. Feyenord, 445 Mass. 72, 75 (2005), cert. denied, 546 U.S. 1187 (2006) (permitting vehicle stop based on inoperable headlight);

---

violator shall be requested to sign the citation in order to acknowledge that it has been received. . . .

"A failure to give a copy of the citation to the violator at the time and place of the violation shall constitute a defense in any court proceeding for such violation, except where the violator could not have been stopped or where additional time was reasonably necessary to determine the nature of the violation or the identity of the violator, or where the court finds that a circumstance, not inconsistent with the purpose of this section to create a uniform, simplified and non-criminal method for disposing of automobile law violations, justifies the failure. In such case the violation shall be recorded upon a citation as soon as possible after such violation and the citation shall be delivered to the violator or mailed to him at his residential or mail address or to the address appearing on his license or registration as appearing in registry of motor vehicles records."

[9] General laws c. 90C, § 3 (A) (1), provides, in pertinent part:

"If a police officer observes or has brought to the officer's attention the occurrence of a civil motor vehicle infraction, the officer may issue a written warning or may cite the violator for a civil motor vehicle infraction . . . ."

Commonwealth v. Santana, 420 Mass. 205, 207 (1995) (permitting stop for defective taillight).[10]  The Commonwealth contends that, similar to these traffic violation statutes, G. L. c. 94C, § 32N,[11] provides a mechanism for issuing civil citations for marijuana possession -- specifically, through G. L. c. 40, § 21D, which governs noncriminal disposition of certain municipal enactments[12] -- and that this mechanism should be

_____

[10] The parties did not identify, nor did we find, any case that directly discusses whether G. L. c. 90C, §§ 2 and 3 (A), authorize police officers to stop moving automobiles in order to issue traffic citations.  However, cases citing these statutes suggest that the statutes have been read as authorizing vehicle stops.  See Commonwealth v. Goewey, 69 Mass. App. Ct. 429, 432 (2007), S.C., 452 Mass. 399, 405 (2008) (citing G. L. c. 90C, § 3 [A] [1], as support for conclusion that traffic stop was valid).  See also Commonwealth v. Correia, 83 Mass. App. Ct. 780, 786 (2013) (mentioning G. L. c. 90C, § 2).

[11] See G. L. c. 94C, § 32N, first par. ("The police department serving each political subdivision of the Commonwealth shall enforce [G. L. c. 94C, § 32L,] in a manner consistent with the non-criminal provisions of [G. L. c. 40, § 21D]").

[12] General Laws c. 40, § 21D, provides, in pertinent part:

"Any city or town may by ordinance or by-law not inconsistent with this section provide for non-criminal disposition of violations of any ordinance or by-law or any rule or regulation of any municipal officer, board or department the violation of which is subject to a specific penalty.

"Any such ordinance or by-law shall provide that any person taking cognizance of a violation of a specific ordinance, by-law, rule or regulation which he is empowered to enforce, hereinafter referred to as the enforcing person, as an alternative to initiating criminal proceedings shall, or, if so provided in such ordinance or

understood as also authorizing police to stop vehicles to issue civil marijuana citations. Furthermore, the Commonwealth notes that in order for a police officer to be able to issue a citation for marijuana possession to a person in a moving automobile and still comply with the requirements of c. 40, § 21D, the officer must be able to order the car to stop.[13]

---

by-law, may, give to the offender a written notice to appear before the clerk of the district court having jurisdiction thereof at any time during office hours, not later than twenty-one days after the date of such notice. . . . Such notice shall be signed by the enforcing person, and shall be signed by the offender whenever practicable in acknowledgment that such notice has been received.

"The enforcing person shall, if possible, deliver to the offender a copy of said notice at the time and place of the violation. If it is not possible to deliver a copy of said notice to the offender at the time and place of the violation, said copy shall be mailed or delivered by the enforcing person, or by his commanding officer or the head of his department or by any person authorized by such commanding officer, department or head to the offender's last known address, within fifteen days after said violation. Such notice as so mailed shall be deemed a sufficient notice, and a certificate of the person so mailing such notice that it has been mailed in accordance with this section shall be prima facie evidence thereof."

[13] General Laws c. 40, § 21D, like G. L. c. 90C, § 2, in the automobile law context, directs the officer issuing a citation in accordance with these statutes to give the offender a copy of the notice of the offense "at the time and place of the violation" if possible. (See notes 8 and 12, supra.) The Commonwealth argues that compliance with this requirement would never be possible if the offender were in a moving automobile that the officer had no authority to stop. Moreover, it would be likely that the officer could not even obtain the offender's name and address, as c. 40, § 21D, requires, while the offender is in a moving automobile.

Focusing first on our traffic violation statutes, we agree with the position of both the Commonwealth and the defendant that because many of these laws pertain specifically to moving vehicles, and G. L. c. 90C, § 2, requires an officer to give a copy of a traffic citation to the violator and to ask that person to sign the citation, c. 90C, §§ 2 and 3 (A), implicitly authorize police officers to stop motor vehicles in order to issue traffic citations. Otherwise, it would be impossible for police to issue citations for moving traffic violations. Moreover, many of the traffic violation laws serve a public safety purpose, and allowing police to stop moving vehicles that are violating them in order to issue traffic citations is one mechanism of promoting safety on our roads. The parties' reading of c. 90C, §§ 2 and 3 (A), is consistent with this purpose.

Like G. L. c. 90C, §§ 2 and 3 (A), neither G. L. c. 94C, § 32N, nor G. L. c. 40, § 21D, says anything about police authority to stop moving vehicles for the purpose of issuing citations -- they are simply silent on this point. But in contrast to c. 90C, §§ 2 and 3 (A), the marijuana possession decriminalization statutes do not directly relate to moving vehicles or to traffic safety. We need not resolve here, however, the question whether, and if so, in what circumstances, c. 94C, § 32N, and c. 40, § 21D, authorize police to stop a

motor vehicle in order to enforce the civil penalties for marijuana possession under G. L. c. 94C, § 32L.  This is so because quite apart from these statutes, there are constitutional considerations that must first be taken into account, and in the end, these constitutional considerations carry the day.

A police stop of a moving automobile constitutes a seizure, and therefore, any such stop, whatever its purpose, must comply with the Fourth Amendment to the United States Constitution and with art. 14 of the Massachusetts Declaration of Rights.  See Commonwealth v. Rodriguez, 430 Mass. 577, 579 (2000).  See also Whren v. United States, 517 U.S. 806, 809-810 (1996); Delaware v. Prouse, 440 U.S. 648, 653 (1979).  We recognize that in the civil traffic law violation context, appellate decisions in Massachusetts have deemed constitutionally permissible stops that factually appeared to satisfy either the probable cause or reasonable suspicion standard.[14]  See Santana, 420 Mass. at 206-207; Commonwealth v. Baez, 47 Mass. App. Ct. 115, 118 (1999).  See also Bacon, 381 Mass. at 643-644.  Cf. Commonwealth v.

_____

[14] Other courts have allowed under the Fourth Amendment to the United States Constitution stops based on reasonable suspicion of traffic offenses.  See United States v. Fox, 393 F.3d 52, 59 (1st Cir. 2004), rev'd on other grounds, 429 F.3d 316 (2005).  See also United States v. Delfin-Colina, 464 F.3d 392, 396-397 (3d Cir. 2006) (reviewing Federal Circuit Courts of Appeals that have allowed stops to enforce traffic laws based on reasonable suspicion).

Washington, 459 Mass. 32, 38-39 & n.14 (2011).[15] Nevertheless,
for the reasons discussed infra, similar stops to enforce the
civil penalty for marijuana possession are constitutionally
distinct, and warrant their own Fourth Amendment and art. 14
analysis.

In undertaking that analysis here, the first task is to
determine whether we are dealing with an issue of probable cause
or reasonable suspicion.  In Commonwealth v. Garden, 451 Mass.
43 (2008), we stated that the "odor of marijuana is sufficiently
distinctive that it alone can supply probable cause to believe
that marijuana is nearby."  Id. at 48.  See Commonwealth v.
Lawrence L., 439 Mass. 817, 823 (2003) ("odors alone may be
sufficient to satisfy the probable cause requirement of the
Fourth Amendment").  However, that decision preceded the
decriminalization of possession of one ounce or less of
marijuana.  See Garden, supra at 43.  Since then, we have
"reconsider[ed] our jurisprudence in light of the change to our
laws."  See Cruz, 459 Mass. at 464 & n.8.  In particular, our
analysis of the meaning that can be derived from the odor of
marijuana alone has evolved, such that, as indicated previously,
we no longer consider the "strong" or "very strong" smell of

---

[15] This is so even though the standards of probable cause
and reasonable suspicion are tied to the investigation of
criminal conduct, not infractionary conduct.  See Commonwealth
v. Cruz, 459 Mass. 459, 465-466 (2011).

unburnt marijuana to provide probable cause to believe that a criminal amount of the drug is present, see Overmyer, 469 Mass. at 23; nor is such a determination of probable cause appropriate based on the smell of burnt marijuana combined with the presence of two small bags totaling less than one ounce.  See Daniel, 464 Mass. at 747, 751-752.  Although we have not explicitly addressed since the passage of the decriminalization statute whether the odor of marijuana alone creates probable cause to believe that any amount of the drug is present, these cases remind us that in reevaluating what inferences may now be drawn from evidence that suggests the possible presence of marijuana, we must also keep in mind the varied and occasionally complex contexts in which such evidence presents itself.

With this principle in mind, Garden's conclusion that the odor of marijuana alone creates probable cause to believe that the drug is still present is insufficiently nuanced, because it fails to account for the significant possibility that the odor of burnt marijuana may be present on a person or in a vehicle, but the drug itself is not.  As we noted in Garden itself, where the occupants of a vehicle wore clothes that smelled like marijuana but a patfrisk of these persons produced no drugs, the odor of burnt marijuana in this context may have "suggest[ed] that the defendant, or others in the car, had been smoking marijuana in the not too distant past."  Id. at 52.  We add here

another possibility:  that the individuals who smelled like marijuana could have been at a social gathering where others smoked marijuana.  See Daniel, 464 Mass. at 747, 756 (interior of vehicle smelled of burnt marijuana; driver attributed this smell to being at party where others smoked).  These examples illustrate the point that although the occupants of a vehicle, or the vehicle's interior, might smell like burnt marijuana, that does not necessarily mean that an occupant of the vehicle currently possesses any amount of marijuana.  Therefore, upon further consideration of these possibilities, and keeping in mind that probable cause determinations turn on "probabilities," including "factual and practical considerations of everyday life," see Commonwealth v. Cast, 407 Mass. 891, 895 (1990) (citation omitted), we conclude that in a case such as the present one, where the only factor leading an officer to conclude that an individual possesses marijuana is the smell of burnt marijuana, this factor supports a reasonable suspicion that that individual is committing the civil offense of possession of a small quantity of marijuana, but not probable cause to believe that he or she is committing the offense. Therefore, the question in this case is whether the Fourth Amendment and art. 14 permit police to stop a vehicle where they have reasonable suspicion, but not probable cause, to believe

that a civil, infractionary offense of marijuana possession is occurring or has occurred.

"[T]he 'ultimate touchstone of both the Fourth Amendment . . . and art. 14 . . . is reasonableness.'" Overmyer, 469 Mass. at 20, quoting Commonwealth v. Entwistle, 463 Mass. 205, 213 (2012), cert. denied, 133 S. Ct. 945 (2013).  Thus, to evaluate the permissibility of particular law enforcement practices, including police stops of moving vehicles where there is no probable cause to suspect the vehicle's involvement in criminal activity, courts have balanced the intrusiveness of the police activities at issue against any legitimate governmental interests that these activities serve.  See Prouse, 440 U.S. at 654, 658-661 (prohibiting vehicle stops without any evidence of traffic or equipment violation).  See also Whren, 517 U.S. at 817-818 (where police lack probable cause for vehicle stop, detailed balancing of interests has determined stop's reasonableness).  Cf. Catanzaro, 441 Mass. at 56 ("There is no ready test for reasonableness [under art. 14] except by balancing the need to search or seize against the invasion that the search or seizure entails").  In balancing these factors, we keep in mind that "art. 14 may provide greater protection than the Fourth Amendment against searches and seizures." Rodriguez, 430 Mass. at 584.

Regardless of the reason for it, a police stop of a moving vehicle can be "humiliating, frightening, and embarrassing" for the vehicle's occupants, and can raise the possibility of arrest and incarceration for a crime unrelated to the original reason for the stop, as the present case illustrates.  See Woods, Decriminalization, Police Authority, and Routine Traffic Stops, 62 U.C.L.A. L. Rev. 672, 713 (2015).  Cf. Prouse, 440 U.S. at 657 (random vehicle stops to check documents "generally entail law enforcement officers signaling a moving automobile to pull over to the side of the roadway, by means of a possibly unsettling show of authority[,] . . . interfere with freedom of movement, are inconvenient, . . . consume time . . . [and] may create substantial anxiety").  However, in the automobile law context, allowing police to make these stops serves a significant governmental interest.  As discussed previously, many of our traffic violation statutes regulate moving cars and relate directly to the promotion of public safety; even those laws that have to do with maintaining a vehicle's equipment in accordance with certain standards may also be safety-related.  See id. at 658 (recognizing States' "vital interest" in vehicle inspection and registration requirements, which ensure that all vehicles are "fit for safe operation").  Permitting stops based on reasonable suspicion or probable cause that these laws may have been violated gives police the ability to immediately

address potential safety hazards on the road.  Thus, although a vehicle stop does represent a significant intrusion into an individual's privacy, the governmental interest in allowing such stops for the purpose of promoting compliance with our automobile laws is clear and compelling.

No similar governmental interest supports allowing police to stop a vehicle based on reasonable suspicion that someone in the vehicle possesses an ounce or less of marijuana in violation of G. L. c. 94C, § 32L.  Although vehicle stops to investigate civil marijuana infractions serve a general law enforcement purpose, there is no obvious and direct link between enforcement of the civil penalty for marijuana possession and maintaining highway safety.[16]  Moreover, particularly because possession of one ounce or less of marijuana was decriminalized through a ballot initiative, our analysis of the governmental interests

---

[16] It is important to distinguish simple marijuana possession, which is at issue here, from the offense of operating a vehicle while under the influence of marijuana. Driving while under the influence of marijuana is a serious offense that may well present safety hazards requiring the immediate involvement of police.  See G. L. c. 90, § 24 (1) (a) (1) (prohibiting driving while under influence of substances, including marijuana).  However, the mere fact that a vehicle driver or passenger possesses marijuana does not mean that the driver has been operating while impaired.  Thus, we have rejected the suggestion that evidence that a driver possessed a noncriminal amount of marijuana, without any evidence of the driver's impairment, created probable cause to believe the driver was operating while under the influence of marijuana and justified searching the vehicle.  Commonwealth v. Daniel, 464 Mass. 751, 754-757 (2013).

served by allowing police to stop vehicles in order to enforce the civil penalty under this law "must give effect to the clear intent of the people of the Commonwealth in accord with art. 14 . . . and the Fourth Amendment."  See Cruz, 459 Mass. at 464-465.  We have determined that the people's intent in decriminalizing possession of this small quantity of marijuana was to establish that this offense was no longer "a serious infraction worthy of criminal sanction," and that those who commit this offense should be treated differently from other drug offenders.  Id. at 471.  In particular, we have identified three policy goals that c. 94C, § 32L, was intended to serve: "to reduce the direct and collateral consequences of possessing small amounts of marijuana, to direct law enforcement's attention to serious crime, and to save taxpayer resources previously devoted to targeting the simple possession of marijuana."  Commonwealth v. Jackson, 464 Mass. 758, 765 (2013).  See Cruz, supra at 471-472.  Permitting police to stop a vehicle based on reasonable suspicion that an occupant possesses marijuana does not serve these objectives.  Rather, it encourages police to continue to investigate and to pursue individuals suspected of this offense in the same manner as before decriminalization, it does not refocus police efforts on pursuing more serious crime, and it subjects individuals who

police merely suspect may be committing a nondangerous, civil offense to all of the potential consequences of a vehicle stop.

Although marijuana possession remains illegal, the present case is not one in which a police officer actually observed an infraction -- such as a person walking through a park smoking what appeared to be a marijuana cigar or cigarette -- and stopped the offender for the purpose of issuing a citation and confiscating the offending item.  Rather, here, an officer smelled burnt marijuana, nothing more, and stopped a vehicle to investigate further whether a citation was appropriate.  (It was only after the stop had been made that Amaral observed the driver's marijuana cigar.)  Because stops based on reasonable suspicion of a possible civil marijuana infraction do not promote highway safety and run contrary to the purposes of G. L. c. 94C, § 32L, we are disinclined to extend the rule that allows vehicle stops based on reasonable suspicion of a civil motor vehicle offense to stops to enforce the civil penalty for possession of one ounce or less of marijuana.  Such stops are unreasonable; therefore, the stop in this case violated art. 14.

3.  Conclusion.  The order denying the defendant's motion to suppress is reversed.  The case is remanded to the District Court for further proceedings consistent with this opinion.

So ordered.

CORDY, J. (dissenting, with whom Spina, J., joins). "An Act establishing a sensible State marijuana policy," codified at G. L. c. 94C, §§ 321L-32N, did not legalize the possession of marijuana; it merely decriminalized the possession of small amounts. See Commonwealth v. Cruz, 459 Mass. 459, 464 (2011). Such possession remains a civil offense and, as with other civil offenses, subjects the offender to a civil penalty and forfeiture of the marijuana. G. L. c. 94C, § 32L.

The novel issue presented here is whether reasonable suspicion of a civil marijuana violation occurring in a motor vehicle is sufficient to justify stopping the motor vehicle for purposes of confirming or dispelling that suspicion and, if necessary, for purposes of issuing a citation.[1] The court, after employing a balancing test weighing the level of intrusion of a motor vehicle stop against the legitimate governmental interest at stake in the enforcement of the marijuana laws, concludes that reasonable suspicion is not sufficient to justify such a stop. For the reasons set forth below, I respectfully dissent.

---

[1] It is important to note that in order to issue a citation for a civil traffic violation, an officer must possess at least probable cause. See Commonwealth v. Washington, 459 Mass. 32, 39 & n.14 (2011). This, however, does not mean that an officer must have probable cause to stop a person suspected of a civil traffic violation. Rather, "an officer's reasonable suspicion of a possible, but unconfirmed, motor vehicle violation sufficiently justifies an investigatory traffic stop in order to verify or dispel that suspicion." Id. at 39 n.14.

It is undisputed that a motor vehicle stop conducted by a police officer constitutes a seizure for purposes of both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.  See Commonwealth v. Rodriguez, 430 Mass. 577, 579 (2000), citing Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 450 (1990).  It is well settled, however, that reasonable suspicion that a civil traffic offense has been committed is constitutionally sufficient to justify a motor vehicle stop.  See Delaware v. Prouse, 440 U.S. 648, 663 (1979) (officer must have "at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that the vehicle or an occupant is otherwise subject to seizure for violation of law"); Commonwealth v. Washington, 459 Mass. 32, 39 & n.14 (2011) ("officer's reasonable suspicion of a possible, but unconfirmed, motor vehicle violation sufficiently justifies an investigatory traffic stop in order to verify or dispel that suspicion").  See also Commonwealth v. Baez, 47 Mass. App. Ct. 115, 118 (1999) (reasonable suspicion that window is illegally tinted sufficient to justify stopping motor vehicle to ascertain whether civil violation had occurred).  In my view, there is no constitutionally based reason to distinguish stops for civil marijuana violations (occurring in motor vehicles) from stops

for civil motor vehicle violations.  Reasonable suspicion of a civil violation is enough.

The court, however, concludes that a detailed balancing inquiry is required when a motor vehicle stop is conducted in the absence of probable cause.  The cases on which the court relies in support of this conclusion, however, concern police activities conducted without any individualized suspicion.  For example, Prouse, 440 U.S. at 650-651, concerned the constitutionality of a motor vehicle stop that was conducted without any suspicion of a traffic or equipment violation, solely to check the driver's license and automobile registration.  In determining the stop's reasonableness, the Supreme Court employed a balancing inquiry because the officers possessed no individualized suspicion of criminal wrongdoing. See id. at 654-659.

Likewise, the central issue addressed by the Supreme Court in Whren v. United States, 517 U.S. 806, 810 (1996), was not the quantum of proof necessary to effectuate a motor vehicle stop for a traffic violation, but whether the (allegedly racial) subjective motivation of the police officer conducting the motor vehicle stop was relevant to the stop's reasonableness.  The Court declined to engage in a detailed balancing inquiry to determine the stop's reasonableness, concluding that such balancing is not necessary when a motor vehicle stop is

conducted with individualized suspicion, id. at 817-819, in that case, probable cause to believe a civil motor vehicle infraction had occurred. Id. at 819. Here, there is also individualized suspicion, albeit at least reasonable suspicion.[2]

Finally, the court relies on Commonwealth v. Rodriguez, 430 Mass. 577, 580-581 (2000), to support its balancing inquiry. The Rodriguez case, however, addressed the constitutionality of a police roadblock set up for the purpose of interdicting illegal drugs. Id. at 585-586. This court noted that except for a few narrowly defined public safety intrusions, a police officer must possess at least reasonable suspicion to justify a motor vehicle stop. Id. at 580, quoting United States v. Huguenin, 154 F.3d 547, 553 (6th Cir. 1998). Again, a motor vehicle stop conducted as part of a suspicionless roadblock is

---

[2] In my view, there is also probable cause. Our jurisprudence in Commonwealth v. Garden, 451 Mass. 43, 48 (2008), remains relevant and instructive. In that case, we concluded that the "odor of marijuana is sufficiently distinctive that it alone can supply probable cause to believe that marijuana is nearby." Id. Nothing has occurred that warrants a reconsideration of this common-sense conclusion. What has occurred is a change in the law making the possession of small amounts of marijuana a civil rather than criminal offense. That there is probable cause to believe some amount of marijuana is nearby remains logical and really beyond debate. The notion of someone having marijuana odor on their clothes (and none in their possession) remains possible -- but does not defeat probable cause. Indeed, the odor of marijuana streaming out of a moving vehicle seems totally inconsistent with the court's hypothetical scenario.

markedly different from a motor vehicle stop made on reasonable suspicion of a civil marijuana violation.

In my view, no detailed balancing of interests is necessary where this court has already recognized that reasonable suspicion of a civil motor vehicle infraction is sufficient to justify an investigatory stop for purposes of confirming or dispelling that suspicion.  See Washington, 459 Mass. at 39 & n.14.  "[T]he reasonableness standard usually requires, at a minimum, that the facts upon which an intrusion is based be capable of measurement against 'an objective standard,' whether this be probable cause or a less stringent test" (footnotes omitted).  Prouse, 440 U.S. at 654.  That standard is met here and standing alone should be sufficient to justify an investigatory stop for the purpose of confirming a civil violation of the marijuana laws and issuing a citation just as reasonable suspicion of a civil traffic violation justifies such a stop.  See, e.g., People v. Brown, 62 Cal. App. 4th 493, 496-497 (1998) (officer may stop individual suspected of violating California vehicle code in order to issue citation); State v. Brown, 694 A.2d 453, 453 (Me. 1997) ("In order to support a brief investigatory stop of a motor vehicle, . . . a police officer must have an articulable suspicion that criminal conduct or a civil violation has occurred, is occurring, or is about to occur . . ."); State v. Colstad, 260 Wis.2d 406, 414-415, cert.

denied, 540 U.S. 877 (2003) (reasonable suspicion that driver violated traffic ordinance justified investigatory stop). The stop is investigative in nature, and its purpose is merely to confirm or dispel the officer's suspicion that a civil marijuana violation has occurred.[3]

The court goes on to opine that because a civil marijuana violation generally has no bearing on traffic and automobile safety, a motor vehicle stop to enforce that law is different from a motor vehicle stop for purposes of enforcing the civil traffic laws, and, consequently, in the court's balance inquiry, probable cause rather than reasonable suspicion is necessary to justify such a stop. While it may be true that not all civil marijuana violations have an impact on automobile safety, to the extent that such a consideration is of any constitutional relevance, it seems also true that civil marijuana violations occurring in motor vehicles do implicate concerns regarding

---

[3] It is important to note that the authority to stop only extends to confirming or dispelling the officer's suspicion. As this court has recognized, the smell of burnt or unburnt marijuana does not establish probable cause for purposes of arrests, see Commonwealth v. Cruz, 459 Mass. 459, 472-476 (2011); searches, see Commonwealth v. Craan, 469 Mass. 24, 35 (2014); and exit orders, see Cruz, supra at 472, 476. Thus, in order for an officer to go any further than issuing a civil marijuana citation, the officer must possess some additional reasonable suspicion or probable cause of criminal activity. See Cruz, supra at 472. See also Commonwealth v. Daniel, 464 Mass. 746, 752 (2013) ("Absent articulable facts supporting a belief that either occupant of the vehicle possessed a criminal amount of marijuana, the search was not justified by the need to search for contraband").

traffic and automobile safety.[4]  Indeed, sending and receiving electronic messages has no bearing on traffic and automobile safety when done in a park.  When done while operating a motor vehicle, however, it presents enough of a safety risk that it is now prohibited by law.  See G. L. c. 90, § 13B.[5]

Finally, the court concludes not only that probable cause is necessary, but also that probable cause can be established only if the police officer actually sees the illegal use of marijuana.  To my knowledge, we have not in the past concluded that probable cause can only be established in this manner. See, e.g., Washington, 459 Mass. at 40 (although officer did not actually see defendant riding in motor vehicle without seat belt, officer had probable cause sufficient to issue citation

---

[4] This is not to say that the smell of marijuana alone is sufficient to establish either reasonable suspicion or probable cause that an individual is driving under the influence of marijuana in violation of G. L. c. § 24 (1) (a) (1).  See Daniel, 464 Mass. at 756 (smell of burnt marijuana without any indication that driver's capacity to operate motor vehicle was impaired not sufficient basis for belief driver was operating while under the influence).  Nevertheless, Daniel is distinguishable:  the officer smelled "freshly burnt" marijuana (which could have been attributable to previous use at a party) when he approached the stopped vehicle.  Id. at 749.  Here, the officer detected the odor of burnt marijuana emanating from a moving vehicle.

[5] It is also not clear under the court's analysis whether reasonable suspicion of a civil marijuana violation would be sufficient for stopping a pedestrian for purposes of confirming or dispelling that suspicion and issuing a citation if confirmed.

where defendant was not wearing seat belt very shortly after traffic stop).

For these reasons, I respectfully dissent.