■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RIGOBERTO RAMOS, Appellant. [997 NYS2d 24]—

Judgment, Supreme Court, New York County (Gregory Carro, J., at suppression hearing; Ronald A. Zweibel, J., at plea and sentencing), rendered January 24, 2012, convicting defendant of criminal possession of a controlled substance in the third degree,

and sentencing him, as a second felony drug offender previously convicted of a violent felony, to a term of six years, unanimously reversed, on the law and the facts, the suppression motion granted and the indictment dismissed.

Police Officer Aaron Rivera testified at the suppression hearing that at approximately 5:30 p.m. on November 17, 2009, while driving an unmarked patrol car at approximately 20 miles per hour in a westbound lane of East 125th Street, he saw a car stopped in traffic on the eastbound side of the street. Rivera stated that defendant, the driver of the car, was smoking a cigarette by holding it between his index finger and thumb, which led him to believe that defendant was smoking marijuana. Rivera made a U-turn and followed the car until it approached the foot of the Triborough Bridge, where he pulled it over. Rivera approached the front driver's side of the car. Rivera told defendant that he saw him smoking marijuana and asked for his driver's license, registration and insurance card. Defendant denied that he was smoking marijuana, but Rivera testified that he detected the odor of marijuana in the front of the car, although he could not state whether it was the smell of burning or unburnt marijuana. He did acknowledge that defendant did not appear to be under the influence of any intoxicants.

Meanwhile, Rivera testified that his partner, Officer Ali, who had approached the passenger's side of the car, gave him a "thumbs up" signal, which indicated that Ali had seen something justifying the removal of the car's occupants. This turned out to be an empty green glassine envelope on the front passenger-side floor. Rivera testified that when he inspected the glassine envelope later that day at the precinct, he came to believe that it had contained marijuana, based on its packaging and the fact that it contained what appeared to him to be remnants of the drug. Rivera requested a laboratory analysis of the glassine, but never received a response. Although the officers conducted a full search of the car, they did not find any marijuana, and placed the three occupants, who had been removed from the car upon Officer Ali's thumbs-up signal, back inside.

Another team of police officers eventually arrived at the scene. Rivera and one of the officers from that team searched the trunk of the car and found two jackets. Upon inspecting the pocket of one of the jackets they found five bags of Ecstasy containing, in total, 485 pills. The three individuals were then arrested.

At the conclusion of the hearing, the court credited Rivera's testimony and denied the motion to suppress. The court found that the officer had a reasonable suspicion to stop the car after

seeing the defendant smoking what he believed to be marijuana and that once he smelled marijuana in the car and Officer Ali recovered the green glassine, the officers had probable cause to search the entire vehicle, including the trunk where the Ecstasy was found.

In connection with his guilty plea, defendant purported to waive his right to appeal. However, the full extent of the court's allocution on the waiver of the right to appeal consisted of the following exchange:

"The Court: You are also going to be required to waive your right to appeal. Do you agree to that?

"Defendant: Yes, your Honor."

Defendant also signed a written waiver, but it was not noted on the record.

A waiver of the right to appeal is not effective unless it is apparent from the record that it was made knowingly, intelligently and voluntarily (*People v Lopez*, 6 NY3d 248, 256 [2006]). For a waiver to be effective, the record must demonstrate that the defendant has a full appreciation of the consequences of the waiver (*People v Bradshaw*, 18 NY3d 257 [2011]), including an understanding "that the right to appeal is separate and distinct from those rights automatically forfeited upon a plea of guilty" (*People v Lopez*, 6 NY3d at 256).

Here, the court never adequately explained the nature of the waiver, the rights the defendant would be waiving or that the right to appeal was separate and distinct from the rights automatically forfeited upon a plea of guilty. Accordingly, the waiver was invalid and unenforceable (*People v Lopez*, 6 NY3d at 256; *People v Santiago*, 119 AD3d 484 [1st Dept 2014]). The written waiver signed by defendant was no substitute for an on-the-record explanation of the nature of the right to appeal (*see People v Oquendo*, 105 AD3d 447 [1st Dept 2013], *lv denied* 21 NY3d 1007 [2013]). In addition, the court's statement that defendant was "going to be required" to waive his right to appeal could have misled him into believing that he had no choice but to do so (*see People v Lopez*, 6 NY3d at 257).

Turning to the merits, defendant argues that this case is controlled by *People v Grunwald* (29 AD3d 33 [1st Dept 2006]). There, this Court held that a police officer was entitled to approach the defendant and request information (a level I encounter pursuant to *People v De Bour* [40 NY2d 210 (1976)]) based on his observation of the defendant smoking an unfiltered, hand-rolled cigarette, which he believed to contain marijuana, "down close to his fingers" (29 AD3d at 34). Defendant,

however, mischaracterizes *Grunwald* as holding that a person's smoking what a police officer believes is marijuana can *only* justify a level I encounter. *Grunwald* says no such thing. Significantly in that case, the defendant was on foot, so a level I encounter was sufficient for the police to clarify whether the defendant was engaged in criminal activity. Indeed, it is evident from the *Grunwald* decision that the People in that case did not argue that the defendant's activity satisfied any of the other *De Bour* levels.

Here, in sharp contrast to *Grunwald*, the police did not have the option of engaging in a level I encounter. That is because informational stops of moving automobiles are *never* permissible unless reasonable suspicion of criminal activity exists or the stop is made as part of a routine and nonpretextual traffic check (*see People v Spencer*, 84 NY2d 749, 753 [1995], *cert denied* 516 US 905 [1995]). Further, nothing in *Grunwald* suggests that a police officer's observation of a person smoking what appears to be marijuana can never justify a traffic stop. To hold otherwise would put the public at risk, as it would prevent police officers from pulling over drivers who they reasonably believed to be driving under the influence of marijuana. Moreover, nothing in *Spencer* suggests that exigent circumstances such as a possibly impaired driver cannot serve as an exception to the rule that reasonable suspicion must exist before an officer can pull over a moving vehicle.

In any event, Officer Rivera, an experienced policeman who had participated in approximately 30 arrests involving marijuana, testified to the court's satisfaction that, in his opinion and experience, the manner in which defendant was handling the cigarette indicated that it was a marijuana cigarette. "[M]uch weight must be accorded the determination of the suppression court with its peculiar advantages of having seen and heard the witnesses" (*People v Prochilo*, 41 NY2d 759, 761 [1977]). That Rivera was not "certain" that defendant was smoking marijuana is of no moment, since "[t]he standard for [a forcible stop is] merely reasonable suspicion, not absolute certainty or even probable cause" (*People v Herrera*, 76 AD3d 891, 895 [1st Dept 2010], *affd* 16 NY3d 881 [2011]). Under these circumstances, we find that the facts as perceived and articulated by Rivera gave rise to reasonable suspicion of criminal activity justifying a level III stop under *De Bour* (40 NY2d at 223).

We now turn to the question of whether the police were justified in searching the trunk of defendant's car. The People contend that the search was justified under the "automobile

exception" to the requirement that a warrant be obtained before a search is conducted. Pursuant to that doctrine, police may search inside a vehicle where there is probable cause to believe that contraband or evidence of a crime will be found (*see People v Galak*, 81 NY2d 463, 467 [1993]). Defendant effectively concedes that the police were entitled to search in the area of the car where Officer Rivera claims to have smelled marijuana, but not anywhere else, and certainly not in the trunk. This, he argues, is because any grounds the police may have had to believe that the trunk contained drugs were belied by the lack of evidence that they existed anywhere else in the car.

Indeed, there was scant evidence of drugs in the car. After approaching the car, Rivera never saw the marijuana cigarette that he claimed he saw when he drove past defendant's car, and he was equivocal about whether he smelled burning or unburnt marijuana. Further, the glassine envelope that Officer Ali uncovered was empty, and it was not until later that day, after defendant and his companions were arrested, that Rivera concluded that it contained marijuana. Rivera also conceded that defendant did not appear to be under the influence. This contrasts with the two cases from this Court on which the People primarily rely, *People v Mena* (87 AD3d 946 [1st Dept 2011], *lv denied* 18 NY3d 860 [2011]) and *People v Valette* (88 AD3d 461 [1st Dept 2011], *lv denied* 18 NY3d 887 [2012]). In those cases, which arose out of a single traffic stop, the defendants admitted to the police officers that they had been smoking marijuana in the car. This furnished probable cause for a search of the car, including the trunk. Here, no such confirming facts exist. Accordingly, we find that the police lacked probable cause to search the trunk, and that the Ecstasy found there should have been suppressed. Concur—Gonzalez, P.J., Mazzarelli, Andrias, DeGrasse and Clark, JJ.