**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**
v.
**VICTOR H. CANNERGEITER, Defendant**

Case No. SX-15-CR-400
Superior Court of the Virgin Islands
Division of St. Croix
September 29, 2016

117

MOLLOY, *Judge*

## MEMORANDUM OPINION

(September 29, 2016)

**THIS MATTER** comes before the Court on Defendant Victor Cannergeiter's Motion to Suppress, filed on April 8, 2016. The Court held a suppression hearing on June 10, 2016. For the reasons stated below, the Court will grant the Defendant's motion and will suppress the evidence seized by law enforcement as a result of the traffic stop that occurred on December 30, 2015.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of December 30, 2015, at approximately 12:50 a.m., officers of the Virgin Islands Police Department ("VIPD") were conducting a crime-reduction initiative called Operation Build Back in the area of Frederiksted, St. Croix. While conducting this operation, officers stopped a red pickup truck driven by an individual later identified

118

to be Victor Cannergeiter ("Cannergeiter"). In addition to Cannergeiter, there was one individual sitting in the front passenger seat and two individuals sitting in the rear bed of the truck. VIPD Officers Alinthia Carbon, Navarro,[1] and Jason Viveros (a member of the K-9 division accompanied by his narcotics dog), were present during the encounter with Cannergeiter.

Officer Carbon proffered the following testimony as to the encounter:

> *Officer Carbon*: On that night, we — were lying down from the side of the road, and I heard one of the officers said, stop that truck, stop that red truck. And one of the officers stopped the truck, and at that time myself and my partner, Officer Navarro, we approached the vehicle while he was making the stop. And the truck stopped. The individual was asked if he was smoking, because at the initial stop, hey stop that truck, I smelled marijuana.
>
> *The People*: Now, which officer was it that initially smelled . . .
>
> *Officer Carbon*: That would be Officer Jules.
>
> *The People*: Okay. Okay. So you said Officer Jules said, stop that truck.
>
> *Officer Carbon*: Stop that truck.
>
> *The People*: I smell marijuana.
>
> *Officer Carbon*: Yes. So the truck was stopped. The driver was asked to present his driver's license, registration, proof of insurance. He complied. Officer Navarro asked the individual if he was smoking marijuana, and he said yes.

*Id.* at 8:15-25; 9:1-10.

Both Officer Carbon and Officer Viveros testified at the hearing that they smelled an odor of marijuana coming from Cannergeiter's vehicle after the vehicle was stopped. Officer Carbon testified that at this point she observed Cannergeiter sweating from his forehead, believed him to be nervous, and asked him to step out of the vehicle for officer safety reasons. The officers then asked Cannergeiter if he had any more drugs in the vehicle, at which time he pointed to the passenger floor area of the vehicle. The officers then asked Cannergeiter for permission to search his vehicle, at which time Cannergeiter responded: "I don't really like people

---

[1] Officer Navarro's first name does not appear in the record.

in my car." Officer Viveros then informed Cannergeiter that if all he had was a little marijuana, "it's no big deal." Officer Viveros then proceeded to advise Cannergeiter that his narcotics dog specializes in detecting heroin, marijuana, and cocaine; that the dog will walk around the vehicle and sit if drugs are detected; and if drugs are detected, they will seize the vehicle and obtain a warrant to search the vehicle. Officer Viveros testified that Cannergeiter then responded "Go ahead." The officers then searched the vehicle and discovered several plastic containers that contained approximately 140 grams of marijuana along with a firearm that contained ammunition. Officer Carbon testified that Cannergeiter admitted the firearm belonged to him and that he did not have a license to possess the firearm. The officers then placed Cannergeiter under arrest.

Cannergeiter offered a slightly different version of what transpired. Cannergeiter testified at the suppression hearing that after his vehicle was stopped, four officers approached within three to four feet of the vehicle. Cannergeiter also testified that he admitted to the officers he had smoked marijuana earlier that evening, but denied giving the officers consent to search his vehicle. Cannergeiter testified that he informed the officers multiple times that "I don't like people searching my car." Cannergeiter further testified that, upon further requests from officers for consent, he said, "No, you cannot search my car." Cannergeiter stated that he continued to refuse giving consent even after Officer Viveros told him of the procedure pertaining to the narcotics dog and the securing of a warrant. Cannergeiter testified that he did point to something in the vehicle when asked if he had any more marijuana, but stated that one officer told him he should not be concerned if he was in possession of marijuana because officers would only seize the substance and let him go.

On January 19, 2016, the People filed an Information charging Cannergeiter with the following criminal offenses: (1) unauthorized possession of a firearm in violation of 14 V.I.C. § 2253(a); (2) unauthorized possession of ammunition in violation of 14 V.I.C. § 2256(a); (3) failure to report a firearm obtained outside or brought into the Virgin Islands in violation of 23 V.I.C. § 470(a); and (4) possession of a controlled substance with intent to distribute in violation of 19 V.I.C. § 604(a)(1). Cannergeiter requests that the Court suppress the evidence retrieved from the car as fruit of an unlawful seizure.

## II. LEGAL STANDARD

■ Searches and seizures by law enforcement officers implicate the Fourth Amendment to the United States Constitution. This constitutional provision prohibits "unreasonable searches and seizures" by government agents. U.S. CONST. amend. IV. Generally, for a seizure to be reasonable under the Fourth Amendment, it must be executed pursuant to a warrant based on probable cause. *See Katz v. United States*, 389 U.S. 347, 356-57, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967). Warrantless searches, therefore, are *per se* unreasonable under the Fourth Amendment subject to a few specifically delineated exceptions. *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978); *see also Horton v. California*, 496 U.S. 128, 133, 110 S. Ct. 2301, 110 L. Ed. 2d 112 (1992) (opining that the general rule is that warrantless searches are presumptively unreasonable).

■ Once a defendant demonstrates that a search or seizure was unreasonable, *i.e.*, conducted without a warrant, the Government bears the burden of demonstrating that the search or seizure complied with the Fourth Amendment. *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995). If the People fail to satisfy this burden, the Court must suppress the evidence and exclude its admission from trial under the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963).

## III. DISCUSSION

Cannergeiter raises three arguments as to why the Court should suppress the evidence discovered in this case. First, Cannergeiter argues that the officers lacked reasonable suspicion to conduct a traffic stop of Cannergeiter's vehicle. Cannergeiter argues that because the Virgin Islands Legislature decriminalized the possession of one ounce or less of marijuana, the scent of marijuana no longer serves as a valid basis to suspect Cannergeiter of engaging in criminal activity. Specifically, Cannergeiter argues that, because the possession of one ounce or less of marijuana is no longer a criminal offense in the Virgin Islands, the scent of marijuana emanating from a vehicle no longer creates the reasonable suspicion necessary to initiate a traffic stop. Second, Cannergeiter argues that the search of the vehicle was unconstitutional because Cannergeiter did not consent to the search. Third, Cannergeiter argues that the officers

did not have probable cause to arrest him for unlawfully possessing the firearm.

■ The People did not file a responsive brief in this case, but argued at the hearing that the officers possessed reasonable suspicion to stop Cannegeiter's vehicle. Specifically, the People argue that the detection of the scent of marijuana by an officer creates reasonable suspicion to perform a traffic stop regardless of whether the possession of marijuana is a criminal or civil offense. Because Cannergeiter was seized and searched without a warrant, the People must demonstrate that the investigative stop and all subsequent Fourth Amendment events fit under an exception to the warrant requirement.

■ One such exception is an investigatory stop conducted in accordance with *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). Under *Terry*, law enforcement officers may conduct an investigatory stop when justified by a reasonable suspicion that an individual is engaged in criminal activity. *Id.* at 21, 28-31. "Reasonable suspicion is just that: suspicion that is reasonably based on the totality of the facts and circumstances." *United States v. Mathurin*, 561 F.3d 170, 173-174, 51 V.I. 1196 (3d Cir. 2009). Reasonable suspicion exists when there are "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Id.* at 21. An "officer . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.' " *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (quoting *Terry*, 392 U.S. at 27).

■ Accordingly, in the landmark case of *Carroll v. United States*, 267 U.S. 132, 153, 45 S. Ct. 280, 69 L. Ed. 543 (1925), the United States Supreme Court held that "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched . . . without a warrant." This principle, now known as the *Carroll* doctrine or the automobile exception to the Fourth Amendment's warrant requirement, has governed automobile-related Fourth Amendment questions for many years. *See United States v. Ross*, 456 U.S. 798, 823, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982) ("an individual's expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband."); *Pennsylvania v. Labron*, 518 U.S. 938, 940, 116 S. Ct. 2485, 135 L. Ed. 2d 1031 (1996) (per curiam) ("If a car is readily mobile and probable cause to believe it

contains contraband, the Fourth Amendment thus permits police to search the vehicle without more."); *California v. Acevedo*, 500 U.S. 565, 580, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991) ("The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained."). Contraband is defined as "[g]oods that are unlawful to import, export, produce, or possess." BLACK'S LAW DICTIONARY 365 (10th ed. 2014); *see also Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 132 S. Ct. 1510, 1519, 182 L. Ed. 2d 566 (2012) ("There are many . . . kinds of contraband. The textbook definition of the term covers any unauthorized item."); *Miller v. DiGuglielmo*, 2011 U.S. Dist. LEXIS 12603, at *19 (E.D. Pa. Feb. 4, 2011) ("An item defined as contraband per se is one that is unlawful to possess regardless of how it is used.") (internal citation omitted).

 While officers must possess probable cause that contraband is present in order to search vehicles, officers need only possess reasonable suspicion of illegality before they may execute a traffic stop on a vehicle. *See, e.g., Delaware v. Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979) (officer must have "at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that the vehicle or an occupant is otherwise subject to seizure for violation of law"); *United States v. Hensley*, 469 U.S. 221, 226, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) (officers "may briefly stop a moving automobile to investigate a reasonable suspicion that its occupants are involved in criminal activity."); *United States v. Delfin-Colina*, 464 F.3d 392, 396 (3d Cir. 2006) (noting that "the Second, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits have all [held] that [ ] police [need only] have reasonable suspicion to believe that a traffic law has been broken" before, initiating a traffic stop) (internal citations omitted); *State v. Colstad*, 2003 WI App 25, 260 Wis. 2d 406, 414-415, 659 N.W.2d 394 (2003), cert. denied, 540 U.S. 877, 124 S. Ct. 281, 157 L. Ed. 2d 141 (2003) (holding that an officer's reasonable suspicion that a driver violated a traffic ordinance justified a subsequent investigatory stop). A traffic stop is constitutional so long as the stop is objectively reasonable based on the facts known to the officer at the time of the seizure. In other words, a seizing officer's subjective motivation is irrelevant for Fourth Amendment purposes. *See United States v. Hawkins*, 811 F.2d 210, 213 (3d Cir. 1987), cert. denied, 484 U.S. 833, 108 S. Ct. 110, 98 L. Ed. 2d 69 (1987).

## A. The Effect of Act No. 7700 and the Decriminalization of the Possession of One Ounce or Less of Marijuana

The threshold issue presented in this case is whether, in light of the decriminalization of the possession of one ounce or less of marijuana in this territory, Virgin Islands police officers may stop vehicles based solely on the detection of an odor of marijuana emanating from the vehicle. This question raises an issue of first impression in the Virgin Islands and requires that the Court analyze the legislative enactment at the heart of this case.

■ On September 25, 2014, the Legislature passed Bill No. 30-0018, now codified at 19 V.I.C. § 607a, decriminalizing the possession of one ounce or less of marijuana in the Virgin Islands. Bill No. 30-0018 became law on December 19, 2014, when the Legislature overrode the veto of then-Governor John P. deJongh, Jr. The statute provides that "[a]ny person who possesses one ounce or less of marijuana commits a civil infraction that is a civil offense punishable by a fine of $100." 19 V.I.C. § 607a. In the prefatory language to this legislation, the Legislature found that "decriminalization typically reflects the changing views of society, as society may come to view a particular act as not harmful," and that the "decriminalization of marijuana would free up criminal justice resources to deal with more serious crimes, which are particularly salient given the extremely high murder rates in the Virgin Islands." Act No. 7700. The Legislature also noted that "decriminalization does not 'legalize' activity, which would be accomplished by removing all or most legal detriments from a previously illegal act." *Id.* Significantly, while the statute decriminalizes the possession of one ounce or less of marijuana, it does not change marijuana's status as a Schedule I controlled substance under 19 V.I.C. § 595. Moreover, while it may be a civil offense to possess one ounce or less of marijuana, the decriminalization statute makes it a misdemeanor punishable by imprisonment not to exceed three (3) months if a person fails to pay any fine imposed by the 180th day after the civil infraction. *See* Act No. 7700, § 2(b), codified at 19 V.I.C. § 607a(h). Furthermore, because marijuana continues to be classified as a Schedule I controlled substance, a person commits a misdemeanor if convicted of possessing more than one ounce of marijuana and could be sentenced up to a year in prison, fined up to $5,000.00, or both. 19 V.I.C. § 607(a). Ultimately, it is still unlawful to possess any quantity of marijuana in the Virgin Islands.

124

As jurisdictions across the United States grapple with the policy decision of how society should treat those who possess marijuana, courts have in turn grappled with another question: whether the longstanding Fourth Amendment axiom — the detection of an odor of marijuana by a trained law enforcement officer creates probable cause to stop and search a vehicle — should stand.[2]

For example, in *Commonwealth v. Rodriguez*, 472 Mass. 767, 777-78, 37 N.E.3d 611 (2015), the Supreme Judicial Court of Massachusetts held that an officer acted contrary to the Fourth Amendment when he stopped a vehicle because he detected an odor of marijuana emanating from the vehicle. In that case, an officer stopped a vehicle after he detected an odor of burnt marijuana coming from it. *Id.* at 768. The Massachusetts high court held that, because the possession of small amounts of marijuana has been decriminalized by referendum, an odor of marijuana does not by itself justify a traffic stop in that state. *Id.* at 778. Specifically, the court noted that the intent of the people of Massachusetts in decriminalizing the possession of small amounts of marijuana was to "reduce the direct and collateral consequences of possessing small amounts of marijuana, to direct law enforcement's attention to serious crime, and to save taxpayer resources previously devoted to targeting the simple possession of marijuana." *Id.* at 777. The court further explained that "[p]ermitting police to stop a vehicle based on reasonable suspicion that an occupant possesses marijuana does not serve these objectives." *Id.* at 777-78.

Similarly, the City Court of New York in Ithaca held that "the mere odor of marihuana emanating from a pedestrian, without more, does not create reasonable suspicion that a crime has occurred, and consequently does not authorize law enforcement to forcibly stop, frisk, or search the individual." *People v Brukner*, 51 Misc. 3d 354, 25 N.Y.S.3d 559, 572 (2015). The court reasoned that because the possession of marijuana is no

---

[2] *See, e.g., United States v. Ramos*, 443 F.3d 304, 308, 47 V.I. 755 (3d Cir. 2006) (opining that "the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause" to stop and search a vehicle.); *United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004) ("The odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."); *United States v. Staula*, 80 F.3d 596, 602 (1st Cir. 1996) ("Case law is consentient that when a law enforcement officer detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area.").

longer a crime in New York, a marijuana odor can no longer by itself justify seizures. The court noted that "[i]t is not a crime . . . to smell, or even reek, of marihuana while standing in public. Unlawful Possession of Marihuana [ ] is a mere [civil] violation, not a crime." *Id.* at 570.

On the other hand, several courts have held that the smell of marijuana not only provides reasonable suspicion to seize a vehicle, but probable cause to search a vehicle despite the decriminalization — and in at least one case *legalization* — of marijuana in those jurisdictions. For example, in *Bowling v. State*, 227 Md. App. 460, 476, 134 A.3d 388 (2016), the Court of Special Appeals of Maryland held that the decriminalization of the possession of small amounts of marijuana in that state did not alter longstanding legal precedent establishing that an odor of marijuana creates probable cause to search a vehicle. The Maryland court noted that, because it is still illegal to possess marijuana in Maryland, the drug remains contraband under the *Carroll* doctrine. *Id.* As a result, the court held that officers may search the vehicle to retrieve the contraband under *Carroll. Id.* The court explained that "the Supreme Court [has never] limited the automobile exception to situations where there is probable cause to believe there is evidence of a crime in the vehicle." *Id.* at 472.

Likewise, in *State v. Smalley*, 233 Or. App. 263, 265, 270-271, 225 P.3d 844 (2010), the Court of Appeals of Oregon held that, despite the decriminalization of the possession of small amounts of marijuana in that state, when a law enforcement officer has probable cause to believe that a validly stopped automobile contains any quantity of marijuana, a warrantless search is justified based on the likely presence of contraband. *See also State v. Kurokawa-Lasciak*, 237 Or. App. 492, 499, 239 P.3d 1046 (2010) ("probable cause to believe a mobile vehicle contained less than an ounce of marijuana justifies a warrantless automobile search because even that noncriminal amount is 'contraband' ").

Similarly, the Maine Supreme Court has held that an odor of marijuana emanating from a vehicle justifies not only a seizure, but a search of the vehicle. In *State v. Barclay*, 398 A.2d 794, 798 (Me. 1979), a Maine police officer initiated a traffic stop to investigate what the officer suspected to be a faulty exhaust system installed on a vehicle. While speaking to the driver, the officer detected an odor of marijuana, and proceeded to search the car without consent. *Id.* at 796. The officer retrieved two bags of marijuana, the possession of which is a civil offense in Maine. The Maine court held that marijuana (which is still an illegal controlled substance in

126

Maine) is contraband and therefore justifies traffic searches where an odor is detected.[3]

In a recent opinion, the Colorado Supreme Court opined that an odor of marijuana may contribute to probable cause that criminal conduct has taken place. Importantly, the people of Colorado — through a constitutional amendment — legalized the recreational use of marijuana in 2012. *See* COLO. CONST. art. XVIII, § 16, cl. 3 (providing that it is "not unlawful and shall not be an offense under Colorado law" for a person over the age of twenty-one to possess under one ounce of marijuana). In *People v. Zuniga*, 2016 CO 52, 372 P.3d 1052, 1059-1060 (2016), the Colorado high court held that — despite a state constitutional provision *legalizing* the possession of less than one ounce of marijuana — an odor of marijuana may be suggestive not only of unlawful conduct, but of criminal conduct. In that case, a Colorado state trooper stopped a vehicle with out-of-state license plates after detecting a "heavy odor" of marijuana emanating from the vehicle. *Id.* at 1054. The trooper suspected that there was criminal activity or contraband in the vehicle because the driver was unusually nervous, the passenger was "overly nice," and the passenger and the driver offered divergent explanations regarding their presence in the state. *Id.* After executing a "free air sniff" of the vehicle with a police dog — during which the dog alerted to the presence of contraband — the trooper searched the car and recovered a criminal quantity of marijuana. The trooper arrested the driver after he confirmed that he owned the contraband. *Id.* at 1055.

The Colorado Supreme Court held that the search did not violate the Fourth Amendment. The court reasoned that "a substantial number of other marijuana-related activities remain unlawful under Colorado law. Given that state of affairs, marijuana is still suggestive of criminal activity. Hence, we hold that the odor of marijuana is relevant to the totality of the circumstances test and can contribute to a probable cause determination." *Id.* at 1059. In rejecting the argument that the legalization of certain amounts of marijuana in Colorado alters the longstanding

---

[3] However, it should be noted that the Maine court's contraband approach differs from the Maryland court's, as the Maine court's approach centered on a Maine statute which provides that search warrants may be issued for controlled substances deemed to be contraband. In other words, the Maine court held that Maine officers possess statutory authority to search vehicles for contraband. This differs from the *Carroll*-based-authority approach utilized by other courts (such as Oregon and Maryland).

doctrine that law enforcement officers may search vehicles upon detection of an odor of marijuana, the court noted that "the Constitution has never required an officer to refrain from searching premises under circumstances in which the activity in question could *potentially* be legal." *Id.* at 1059 (citation omitted; emphasis in original).

■ This Court agrees with the courts of Maine, Maryland, Oregon, and Colorado and holds that the decriminalization of small amounts of marijuana does not prohibit officers from stopping a vehicle based on the detection of a smell of marijuana. First, the Legislature did not alter marijuana's status as a Schedule I controlled substance under 19 V.I.C. § 595. As such, marijuana is contraband and is still illegal to possess in the Virgin Islands. *See, e.g., Commonwealth v. Cruz*, 459 Mass. 459, 473, 945 N.E.2d 899 (2011) ("[b]ecause marijuana remains unlawful to possess, any amount of marijuana is considered contraband."); *State v. Cabrera*, 2016 R.I. Super. LEXIS 85, at *9 (R.I. Super. Ct. July 21, 2016) ("The Decriminalization Statute . . . does not remove marijuana's contraband status as it does not deschedule marijuana as a controlled substance . . . .").

■ Neither the Fourth Amendment nor Act No. 7700 requires law enforcement officers to turn a blind eye to the suspected presence of an illegal substance in a moving vehicle. Act No. 7700 explicitly provides that marijuana, as contraband, is subject to forfeiture and that "all civil penalties . . . may be assessed by the appropriate court." 19 V.I.C. § 607(a). This language expressly permits law enforcement officers, in enforcing the statute, to confiscate the prohibited contraband (marijuana), issue citations, and keep the appropriate records to ensure that the fines are paid in a timely fashion. *See* 19 V.I.C. § 607a(b)(1) (providing that possession of one ounce or less of marijuana is a civil offense punishable by a fine of $100 and the marijuana "may be subject to forfeiture"). Accordingly, allowing officers to stop motorists based on the smell of an odor of marijuana emanating from the vehicle is consistent with the express language of Act No. 7700.

■ Second, because marijuana remains a Schedule I controlled substance in the Virgin Islands, it continues to be a criminal offense to operate, drive, or be in actual physical control of a motor vehicle while

128

under the influence of marijuana. *See* 20 V.I.C. § 493(a)(1);[4] *see also id.* at § 493(b)(1) ("Any person convicted of a first violation of [section 493(a)(1)] . . . shall be guilty of a misdemeanor and shall be punished by imprisonment for not more than one year . . . ."). Accordingly, while the smell of an odor of marijuana emanating from the inside of a moving vehicle is not conclusive evidence that a person is driving under the influence of that controlled substance, it is certainly suggestive of such. *See State v. Randy J.*, 2011- NMCA 105, 150 N.M. 683, 693, 265 P.3d 734 (2011) ("We conclude that the odor of marijuana emanating from the vehicle combined with the odor of marijuana on [Appellant's] person provided objective, articulable facts that would lead a reasonable officer to suspect that [Appellant] was driving under the influence."); *see also People v. Ramos*, 122 A.D.3d 462, 465, 997 N.Y.S.2d 24 (2014) (noting that an officer's suspicion that a driver is smoking marijuana "can . . . justify a traffic stop. To hold otherwise would put the public at risk, as it would prevent police officers from pulling over drivers who they reasonably believed to be driving under the influence of marijuana."); *Jenkins v. State*, 970 A.2d 154, 158-159 (Del. 2009) ("Jenkins' behavior and the strong marijuana odor were sufficient to establish probable cause to arrest Jenkins for Driving Under the Influence . . . of Marijuana."); *Shakespeare v. State*, 2001 Tex. App. LEXIS 2727, at *7 (Tex. Ct. App. 2001) ("While a smell of alcohol, however strong, does not definitively signal legal impairment, such a smell is suggestive of intoxication and therefore may legitimately be considered when determining whether the detaining officer had reasonable suspicion.").

 Third, the Fourth Amendment does not proscribe traffic stops aimed at investigating noncriminal, nontraffic civil infractions. *See, e.g.,* DAVID KEENAN & TINA M. THOMAS, *An Offense-Severity Model for Stop-and-Frisks*, 123 YALE L.J. 1448, 1455 (2014) ("Courts have . . . gradually expanded the boundaries of permissible Terry stops to include stops for . . . civil infractions."); *Prouse, supra*, at 663 (holding that traffic

---

[4] Section 493(a)(1) provides:

> It is unlawful for any person who is under the influence of an intoxicating liquor or a controlled substance included in Schedule I, II, III, IV, or V of the section 595, chapter 29, Title 19, Virgin Islands Code, or under the combined influence of an intoxicating liquor and such a controlled substance, to drive, operate, or be in actual physical control of, any motor vehicle within the Territory.

stops satisfy the Fourth Amendment when officers have reasonable suspicion that a driver is "subject to seizure for *violation of law*") (emphasis added); *Iverson, supra,* at 674 (holding that the Fourth Amendment permits an officer to initiate a traffic stop where he possesses reasonable suspicion that a motorist committed the violation of littering — a noncriminal, nontraffic civil infraction punishable only by a fine in Wisconsin); *State v. Dumas,* 786 So. 2d 80, 83 (La. 2001) (per curiam) (upholding a stop for walking in a roadway, a municipal ordinance violation); *State v. Morris,* 56 Ore. App. 97, 641 P.2d 77, 80 (1982) (upholding a stop for a curfew violation, a noncriminal regulation); *People v. Carmona,* 195 Cal. App. 4th 1385, 1389-1390, 124 Cal. Rptr. 3d 819 (Cal. App. 4th Dist. 2011) ("The Fourth Amendment[ ] dictates that traffic stops must be supported by [ ] a reasonable suspicion that the driver or a passenger has violated the [traffic laws] *or some other law.*") (emphasis added); *State v. Brown,* 1997 ME 90, 694 A.2d 453, 453 (1997) ("In order to support a brief investigatory stop of a motor vehicle, . . . a police officer must have an articulable suspicion that criminal conduct *or a civil violation* has occurred, is occurring, or is about to occur . . .") (emphasis added).[5] Just as officers may temporarily seize individuals for violating the noncriminal anti-littering laws of the Virgin Islands, officers may also temporarily seize individuals for violating the non-criminal marijuana laws, especially if the individual is operating a motor vehicle.[6]

---

[5] *But see State v. Duncan,* 146 Wn.2d 166, 43 P.3d 513, 517 (2002) (declining "to extend the *Terry* stop exception under the Fourth Amendment . . . to nontraffic civil infractions."). In that case, the Washington Supreme Court reasoned that "[w]hen investigating a civil infraction an officer is not seeking to arrest an individual, but rather to issue a citation. In light of the lower risk to society involved with civil infractions, . . . a less intrusive procedure would be more acceptable than with the commission of a felony or even a misdemeanor." *Id.* at 519. While the court held that *Terry* does not apply to stops aimed at investigating civil offenses, the court emphasized that Washington officers may still "stop and detain" individuals suspected of committing civil infractions where the infraction "occur[s] in the[ ] [officer's] presence . . ." pursuant to an empowering state statute.

[6] While the Legislature pronounced that the "decriminalization of marijuana would free up criminal justice resources to deal with more serious crimes," *see* Act No. 7700, "this court has no authority to decide which laws are sufficiently important to merit enforcement." *State v. Iverson,* 2015 WI 101, 365 Wis. 2d 302, 871 N.W.2d 661, 675 (2015). That decision should be "entrust[ed] to the good sense (and, failing that, the political accountability) of our lawmakers *and law enforcers.*" *Id.* (emphasis added). Indeed, "law enforcement officials can enforce with the same vigor all rules and regulations irrespective of the perceived importance

■ Cannergeiter argues that because police officers are incapable of determining the quantity of marijuana present in a vehicle solely from an odor, the smell alone cannot provide reasonable suspicion to stop a vehicle. While it is virtually impossible to smell the exact quantity of any controlled substance, reasonable suspicion does not demand exactness. Courts should be wary of using bright-line tests to determine whether law enforcement officers have reasonable suspicion because "the concept of reasonable suspicion is not 'readily, or even usefully, reduced to a neat set of legal rules.' " *People of the Virgin Islands v. Turnbull*, 2014 V.I. LEXIS 46, at *10 (V.I. Super. Ct. June 2, 2014) (quoting *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)). To be sure, "[c]alculating whether an officer has reasonable suspicion to warrant a stop and search is often an imprecise judgment." *Robertson*, 305 F.3d at 168. Accordingly, "[c]ourts give considerable deference to police officer's determinations of reasonable suspicion . . . ." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006). Thus, "[i]n determining whether there was a basis for reasonable suspicion, a court must consider the totality of the circumstances, in light of the officer's experience." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003). Reasonable suspicion may be the result of several factors, including specialized knowledge and investigative inferences, personal observation of suspicious behavior, and information received from reliable sources. *Blyden v. People*, 53 V.I. 637, 649 (V.I. 2010) (citing *United States v. Nelson*, 284 F.3d 472, 478 (3d Cir. 2002)).

■ Unquestionably, the smell of alcohol emanating from the driver of a vehicle creates reasonable suspicion that the driver is intoxicated. Just as the smell of alcohol emanating from the driver of a vehicle could serve as a basis to reasonably suspect a person of driving under the influence of an intoxicating liquor, the smell of marijuana emanating from a vehicle could, depending on the circumstances, serve as a reasonable basis for suspecting a person of violating 20 V.I.C. § 493(a)(1).[7] *See United States v. Hutchinson*, 471 F. Supp. 2d 497, 509 (M.D. Pa. 2007) ("Like

---

of any of those rules." *Safford Unified Sch. Dist #1 v. Redding*, 557 U.S. 364, 391, 129 S. Ct. 2633, 174 L. Ed. 2d 354 (2009) (Thomas, J., concurring in result and dissenting in part).

[7] For more than three decades, courts across the United States have recognized the plain smell doctrine as an exception to the warrant requirement. For example, in *Horton v. Goose Creek Independent School Dist*, the Fifth Circuit Court of Appeals explained:

plain view, 'plain smell' can provide probable cause to justify a search where an officer smells a substance that is immediately apparent to him to be the odor of contraband.").

■ Accordingly, this Court holds that an officer trained in the identification of narcotics who detects an odor of marijuana emanating from a vehicle may acquire reasonable suspicion to stop that vehicle. As the Legislature noted, "decriminalization does not 'legalize' activity, which would be accomplished by removing all or most legal detriments from a previously illegal act." *See* Act No. 7700; *see also Cruz*, 459 Mass. at 473 ("decriminalization is not synonymous with legalization."); JORDAN B. WOODS, *Decriminalization, Police Authority, and Routine Traffic Stops*, 62 UCLA L. REV. 672, 677 (2015) (noting that "decriminalization involves . . . modifying the sanctions that attach to particular kinds of conduct . . . ," but does not on its own legalize an act). Because marijuana remains a Schedule I controlled substance — and, as a result, is still illegal to possess — the decriminalization of the small amounts of marijuana does not change this analysis. If the officers in this case had reasonable suspicion that Cannergeiter possessed marijuana, the officers could lawfully stop Cannergeiter's vehicle for the purpose of investigating their suspicions. A contrary holding would effectively legalize the use of marijuana on Virgin Islands roads, as officers would be deprived of any practical mechanism to ticket offenders, seize contraband as evidence, or generally investigate motorists they suspect of violating 19 V.I.C. § 607(a) or 20 V.I.C. § 493. This result would create a form of roadway immunity that the Legislature did not intend.[8] Because

---

The courts have in effect adopted a doctrine of 'public smell' analogous to the exclusion from the Fourth Amendment coverage of things exposed to public 'view'. . . . The courts have reasoned that if a police officer, positioned in a place where has a right to be, is conscious of an odor, say, of marijuana, no search has occurred; the aroma to the public 'view' and, therefore, unprotected.

690 F.2d 470, 477 (5th Cir. 1982).

[8] The Court has serious concerns regarding the continued viability of section 607a decriminalizing the possession of one ounce or less of marijuana. As an unincorporated territory of the United States, "[t]he Government of the Virgin Islands is not itself a sovereign entity." *Magens Point Resort Hotel v. Benjamin*, 58 V.I. 191, 196 (V.I. 2009); *see also Rivera-Moreno v. Gov't of the Virgin Islands*, 61 V.I. 279, 305 (V.I. 2014) (stating that "the Virgin Islands territorial government is a subdivision of the United States government . . . ."). The Virgin Islands is governed by the Revised Organic Act of 1954 ("ROA"), a federal statute that serves as its "de facto constitution." *See Vanterpool v. Gov't of the Virgin Islands*, 63 V.I. 563,

marijuana is contraband and officers may stop vehicles to investigate the possession of contraband under *Carroll* and *Prouse*, this Court concludes that the Fourth Amendment permits Virgin Islands officers trained in the identification of marijuana odors to stop vehicles if they detect an odor of marijuana emanating from that vehicle.

### B. Whether the Officers Possessed Reasonable Suspicion to Perform an Investigatory Stop

 Having determined that the smell of marijuana emanating from a vehicle may provide a valid basis to effectuate a traffic stop, the Court will now analyze whether the officers in this case had a legal basis to stop Cannergeiter. Undoubtedly, Cannergeiter was seized when police stopped his vehicle. *See, e.g.*, *Brendlin v. California*, 551 U.S. 249, 251, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007) (holding that every person present in a vehicle is seized for Fourth Amendment purposes during a traffic stop); *Ozga v. Elliot*, 150 F. Supp. 3d 178, 187 (D. Conn. 2015) ("Classic examples of . . . a . . . seizure include an ordinary traffic stop . . ."). The question now becomes whether the officers possessed reasonable suspicion to effectuate the stop.

 The United States Supreme Court has explained:

> The Fourth Amendment permits brief investigative stops — such as the traffic stop in this case — when a law enforcement officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417-418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981); *see also Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The "reasonable suspicion" necessary to justify such a stop "is dependent

---

589 (V.I. 2015). Section 8 of the ROA limits the Virgin Islands Legislature's lawmaking authority by providing that "[t]he legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation *not inconsistent with [the ROA] or the laws of the United States* made applicable to the Virgin Islands . . . ." 48 U.S.C. § 1574(a) (emphasis added). Under United States law, the possession of any amount of marijuana continues to be a criminal offense. *See* 21 U.S.C. § 844. The provisions of section 607a decriminalizing the possession of one ounce or less of marijuana in the Virgin Islands appear to be wholly inconsistent with federal law. However, neither party raised this issue during the course of this litigation or provided any briefing on this matter. Consequently, the Court will decline to decide this issue *sua sponte*, especially given its ultimate ruling on the reasonable suspicion question.

upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). The standard takes into account "the totality of the circumstances — the whole picture." *Cortez, supra*, at 417. Although a mere "hunch" does not create reasonable suspicion, *Terry, supra*, at 27 (1968), the level of suspicion the standard requires is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less" than is necessary for probable cause, *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).

*Navarette v. California*, 134 S. Ct. 1683, 1687, 188 L. Ed. 2d 680 (2014).

■ "If a police officer stops a person on the street without reasonable suspicion, that seizure violates the Fourth Amendment. [ ] That much is beyond dispute." *Utah v. Strieff*, 136 S. Ct. 2056, 2071, 195 L. Ed. 2d 400 (2016) (Kagan, J., dissenting). The Court must rely on "certain common-sense conclusions about human behavior" to determine whether the officers possessed reasonable suspicion to effectuate an investigatory stop. *United States v. Cortez*, 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981). Whether reasonable suspicion exists must be determined in light of the "totality of the circumstances" confronting an officer. *Id.*

■ The Fourth Amendment requires that an officer's suspicion be particularized to the subject of the seizure. *See, e.g., Ybarra v. Illinois*, 444 U.S. 85, 92-93, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979) (holding that officers lacked reasonable suspicion to detain patron — despite the fact that police possessed warrant to search tavern and generalized suspicion that drug transactions occurred in tavern — because there was no indication that patron was armed). While "it does not take an expert to identify the smell of marihuana smoke," *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002), there should be "some evidentiary foundation for an officer's identification of a particular odor." *People v. Weaver*, 2013 IL App (3d) 130054, 377 Ill. Dec. 705, 2 N.E.3d 621, 628 (2013). "[A]n officer's testimony as to the odor of cannabis, *when supported by testimony regarding training and experience detecting such an odor*, provides probable cause." *Id.* at 627 (emphasis added); *see also United States v. Brown*, 621 F.3d 48, 56 (1st Cir. 2010) ("It is well-established that the observations of experienced law enforcement officers are entitled to deference."); *United States v. Martin*, 2013 U.S. Dist.

LEXIS 103795, at *5 (E.D. Cal. 2013) (finding officer's detection of a marijuana odor reliable where the officer was "trained to identify marijuana and has viewed marijuana more than 50 times during his law enforcement duties."); *State v. O'Neal*, 2003 Ohio Misc. LEXIS 1654, at **13-20 (Ohio C.P. 2003) (affording little deference to an officer's testimony where the officer "was uncertain about the smell of marijuana."); *United States v. DeLeon*, 979 F.2d 761, 764-765 (9th Cir. 1992) ("[A] warrant cannot be based on the claim of an untrained or inexperienced person to have smelled [marijuana].").

■■■ Here, the People have failed to sustain their burden of showing that the officers possessed a reasonable, articulable, and particularized suspicion that Cannergeiter possessed marijuana. Officer Carbon testified that Officer Jules said, "I smell marijuana" and then directed the other officers to stop Cannergeiter's vehicle. Importantly, Officer Carbon did not testify that Officer Jules saw Cannergeiter smoking or even that he detected an odor emanating from Cannergeiter's vehicle. *See, e.g., United States v. Brown*, 621 F.3d 48, 55-56 (1st Cir. 2010) (finding reasonable suspicion to stop a vehicle where another officer provided information that the driver of the car in which defendant was a passenger was smoking marijuana); *United States v. Brown*, 261 Fed. Appx. 371, 373 (3d Cir. 2008) ("Detective Maxwell smelled marijuana coming from the car. This alone was enough to establish probable cause."). Additionally, the People presented no information regarding Officer Jules' training in identifying the odor of marijuana. The People also failed to introduce evidence showing that Officer Jules' suspicion was particularized to Cannergeiter's vehicle. For example, there was no testimony pertaining to the distance between Officer Jules and Cannergeiter's vehicle. *See, e.g., Ramos*, 443 F.3d at 308 (concluding that, for purposes of establishing reasonable suspicion, the odor of marijuana was sufficiently particularized where officers "smelled an identifiable marijuana odor" within three or four feet of defendants' car and, relying on their skill and experience, concluded that the odor was coming from the vehicle). The People base its argument for reasonable suspicion on a lone statement from Officer Carbon that Officer Jules proclaimed, "I smell marijuana" before instructing Officer Carbon and other officers to stop Cannergeiter's vehicle. However, "a broadly diffuse and undistinguished marijuana odor will not automatically provide the necessary particularity to establish reasonable suspicion." *Id.* at 309. Accordingly, the Court finds the statement, "I smell marijuana" to

be fatally unspecific and unparticularized and concludes that such a general statement by an officer of unknown experience may not, by itself, establish reasonable suspicion to stop a vehicle in the Virgin Islands.

▮▮ The Court recognizes that it may impute Officer Jules' knowledge and observations to Officer Carbon, *see United States v. Hensley*, 469 U.S. 221, 232, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985) (imputing one officer's reasonable suspicion to another where the first officer's suspicion was communicated to the second officer), Officer Jules must have possessed reasonable suspicion in the first instance in order for a traffic stop based on his directive to be constitutional.[9] Accordingly, the Court finds that Officer Jules' unparticularized detection of a scent of marijuana did not create reasonable suspicion to execute a traffic stop on Cannergeiter's vehicle.

## IV. CONCLUSION

▮▮ For the reasons stated above, this Court holds that the Legislature's enactment of Act No. 7700 decriminalizing the possession of one ounce or less of marijuana in the Virgin Islands does not preclude law enforcement officers from stopping a vehicle based on the detection of an odor of marijuana emanating from that vehicle. Notwithstanding this holding, the Court concludes that the People have failed to demonstrate that the officers, in this case, possessed reasonable suspicion to stop Cannergeiter's vehicle. Thus, the Court will grant Cannergeiter's motion and will suppress all of the evidence discovered as a result of his seizure under the "fruit of the poisonous tree" doctrine. *See Wong Sun*, 371 U.S. at 488. An appropriate Order follows.

---

[9] The Court recognizes that both Officer Carbon and Officer Viveros testified that they smelled an odor of marijuana coming from Cannergeiter's vehicle after it was stopped. But such *post hoc* justifications for traffic stops have been routinely rejected by courts as constitutionally deficient. *See, e.g., United States v. Lewis*, 672 F.3d 232, 238, 56 V.I. 871 (3d Cir. 2012) (explaining that the Fourth Amendment "requires the officer to have observed a traffic violation prior to initiating the traffic stop.").